**HARSTON, Sheriff, et al. v. LANGSTON et al.**
**(No. 7027.)**

(Court of Civil Appeals of Texas. Austin. Dec. 22, 1926. Rehearing Denied Jan. 12, 1927. Writ of Error Refused March 9, 1927.)

1. **Sheriffs and constables ⬅106—Sheriff held liable under statute for failure to enforce execution under mistaken belief property was exempt as homestead (Rev. St. 1925, art. 3825).**

A sheriff and his sureties were liable for money which could have been collected by proper diligence on execution of judgment, where he failed to execute judgment under mistaken belief that property was exempt as homestead, under Rev. St. 1925, art. 3825 (3776) providing officer shall be liable for failure to sell property subject to execution when he could have done so.

2. **Sheriffs and constables ⬅77—"Sheriff" is administrative officer of court.**

"Sheriff" is an officer of the court under duty to execute process, but is not tribunal to determine doubtful questions of fact.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sheriff.]

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Sheriffs and constables ⊙⊶138(1)—Burden is on sheriff to show execution could not have been collected.**

Burden is on sheriff who fails to collect money on execution to show that nothing could have been collected by proper official diligence.

**4. Homestead ⊙⊶168—Portion of city lot, occupied by tenants for two years, held abandoned as homestead, and not exempt.**

Portion of city lot formerly occupied by owner, but rented for two years to tenants, and separated from another house on same lot used by the owner as a home, had been abandoned as homestead, and was not exempt from execution.

**5. Homestead ⊙⊶162(1)—Conditional intention of owner having homestead to return to former home occupied by tenants did not preserve exemption therein.**

One who removed to a smaller house built on portion of city lot, and lived there two years while renting the other home, could not preserve homestead exemption in entire premises by mere intention on condition to return to tenant's house at future time.

**6. Homestead ⊙⊶168—City lots are not substantially used for home when leased for income.**

Homestead exemption in city lots extends only to premises substantially used by family for home purposes, and they are not so used when leased for income, notwithstanding occasional use by the owner.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Action by the Dallas Lumber Company against L. Q. Langston and others. Judgment for plaintiff, on which execution was issued. After motion against Dan Harston, Sheriff, and his bondsmen for failure to collect the execution, judgment was rendered against them, and they appeal. Affirmed.

Holland, Bartlett, Thornton & Chilton, of Dallas, for appellants.

Thorne, Brown & Renfro, Connie C. Renfro, and Chas. S. McCombs, all of Dallas, for appellees.

BLAIR, J. Appellee Dallas Lumber Company recovered judgment against L. Q. Langston for $648.35, with interest and costs, upon which execution was issued and placed in the hands of appellant Harston, sheriff of Dallas county, who levied upon certain of Langston's real estate, but did not sell it, because, as stated in his return, Langston filed with him an affidavit claiming the property as the homestead of himself and family. By motion filed in the suit out of which the execution issued, appellee lumber company alleged that, by reason of the facts stated, the failure of the sheriff to sell the land levied upon damaged it in the amount of its judgment, interest, and costs, and prayed for judgment against the sheriff and his bonds-

men under provisions of article 3776 (3825, Revised Statutes 1925), which reads:

"Should an officer fail or refuse to levy upon or sell any property subject to execution, when the same might have been done, he and his sureties shall be liable to the party entitled to receive the money collected on such execution for the full amount of the debt, interest and costs, to be recovered on motion before the court from which said execution issued, five days previous notice thereof being given to said officer and his sureties."

Appellants, the sheriff and his bondsmen, set up the homestead character of the premises levied upon in defense of the suit on the motion. The homestead issue was tried to the court without a jury, and, after hearing the evidence, the court rendered judgment against appellants as prayed for by appellee lumber company. We affirm the judgment.

In reference to the homestead question, the testimony is uncontroverted, and shows that L. Q. Langston purchased a lot of land, about 50 feet wide and 150 feet deep, on the corner of Cedar Hill avenue and Netches street, in the city of Dallas, for $1,250, and built thereon a five-room house, facing west on Cedar Hill avenue, about 25 feet back from the street line, and built a garage east of the house; and, when the house was sufficiently complete, he occupied it with his family as their homestead for about two years. He then purchased an old house, which he tore down, and attempted to use the material to put a second story on his house, but, after deciding that the foundation was insufficient, abandoned the project, and reconstructed the house to its former state. With the old lumber purchased he erected on the lot just back of the house fronting on Cedar Hill avenue a four-room house with shed kitchen, fronting Netches street, and moved into it with his family about two years prior to the levy of the execution on the premises fronting Cedar Hill avenue, and has continuously occupied it as a home for himself and family. He also erected between the two houses three box garages, about 30 feet wide and 14 feet deep. He then rented continuously the Cedar Hill avenue house and one of the garages to tenants; and, at the time of the levy, the premises were occupied by a tenant who was paying $37.50 per month rent, which he considered reasonable. Langston retained two of the garages for his own use. The tenants used the premises in the fullest sense, and, as all rental property is used, to the exclusion of Langston and all others. Langston did not use the rented property for any family purposes. He used the rentals to pay debts on the premises and for other family purposes. There was a space of about 10 feet between the garage and the tenant's house,

which the tenant used, and, in addition, used land fenced back of the garage as a little chicken run. As between Langston and his tenant the portion of the premises occupied by the tenant was well defined. The tenant kept flowers and shrubbery in his yard, which were cared for by his wife and daughter. . Langston had flowers in front of the property occupied by him, which were separate and distinct from those of the tenant, and each family worked their own flower beds. That, with the exception of some water furnished by Langston, the tenant watered the flowers and shrubs, paid for the trimming and pruning necessary, and cut his own part of the lawn; and Langston did the same with reference to the portion of the premises facing Netches street. Both houses were kept well and nicely painted by Langston. The house facing Netches street had a separate and distinct foundation, roof, water connection, separate meters, and separate light connections, and there were all conveniences in the Cedar Hill avenue house, including gas connection, hot water heater, and telephone. Langston gave his address as 615 Netches street. The tenant's address was that of the Cedar Hill avenue house. Langston testified, in one instance, that he intended at some future date to tear down the residence in which he was living and use the material to reconstruct the tenant house, and then move into it with his family. In another instance he stated that he intended some time in the future, when he· was able, to cónstruct a two-story residence in the place of the rented house, use the new building as his home, and then rent out the house in which he is now living.

[1-3] By their first proposition appellants insist that under the circumstances the sheriff had a reasonable excuse for not selling the property because of the homestead claim, and would not be liable for failure to sell it. A sheriff is an officer of the court, under duty to execute process, but is not a tribunal to determine doubtful questions of fact,. which the sheriff undertook to do in this case, and his liability is stated as follows in the case of Goodrich Rubber Co. v. Valley Plumbing Co. (Tex. Civ. App.) 267 S. W. 1036:

"The failure of the officer to discharge his duty in the premises renders him and his sureties prima facie liable to the plaintiff in execution for the full amount of his debt, interest, and costs, and the burden is on the officer to overcome such prima facie case by showing that nothing could have been collected on such execution by proper ·official diligence."

[4] By their second and third propositions appellants insist that the primary object of the statute in question was to compensate the party for any injury occasioned by the default of the officer, and, where no injury had been sustained, no right of compensation arose, and that, since the property in question was as a matter of law the homestead of Langston, the failure to sell it occasioned no injury to appellee. '

In the recent case of Hudgins v. Thompson, 109 Tex.· 433, 211 S. W. 586, the Supreme Court carefully reviewed the question of homestead abandonment and the leading cases relied upon by appellants here, and reannounced the following rules applicable to the facts in this case: First, "Abandonment of property actually homestead can not be accomplished by mere intention; there must be a discontinuance of the use coupled with an intention not again to use as a home to constitute abandonment;" and, second, after holding, "that the right to an old homestead might be forfeited although a new one had not been acquired," also held, "that the best evidence of homestead abandonment was that a new and permanent home had been acquired, and, in the absence of a new and permanent home, the old ought not to be held subject to the claims of creditors, unless the proof of 'total abandonment with an intention not to return' 'be undeniably clear and beyond almost the shadow, at least, all reasonable ground, of dispute.'"

In the instant case Langston not only claimed the residence in which he lived with his family as a homestead, but claimed the entire lot, including the residence which he had for two years rented out, and for which he received a substantial rental income. Since he had acquired another homestead, the "undeniably clear" and the "beyond shadow or reasonable ground of dispute" rules do not apply, and the trial courts' finding that he had abandoned as a homestead the premises levied upon is abundantly supported by the evidence.

[5] Appellants insist that intention is an important factor in determining the homestead character of the property, and lay considerable stress upon the statement of Langston that he intended to move back in the house on Cedar Hill avenue, and that he did not intend to abandon it as his homestead. But we submit that nowhere did Langston testify that he intended to ever occupy the premises as it now exists as his homestead, and his future occupancy was always prefaced by a condition. One condition was that, when he was able to tear down ·the building now rented, and erect a two-story house, he would then occupy the two-story house as his homestead. Another condition was based upon his financial ability to construct another new house on the premises, but, in any event, the homestead which he intended to occupy was not the one now existing, but one which he intended to hereafter build.

[6] The following authorities hold that, in order to protect lots in a city or town not actually occupied by the family residence or

its appurtenances, they must be substantially used by the family 'for home purposes. When leased to tenants, producing an income, it is evident that they are no longer used as an adjunct to the family residence, and should no longer demand the homestead exemption. The mere fact that occasional uses are made by the owner of the premises does not save it from execution. It is the principal use to which the property is subject that must be looked to. Blackburn v. Knight, 81 Tex. 326, 16 S. W. 1075; Blackwell v. Lasseter (Tex. Civ. App.) 203 S. W. 619; Blum v. Rogers, 78 Tex. 530, 15 S. W. 115; Davis v. Taylor (Tex. Civ. App.) 33 ·S. W. 543; Duncan v. Alexander, 83 Tex. 441, 18 S. W. 817; Goodrich Rubber Co. v. Valley Plumbing Co. (Tex. Civ. App.) 267 S. W. 1036; Lasseter v Blackwell (Tex. Com. App.) 227 S. W. 944; Lipscomb v. Adamson Lumber Co. (Tex. Civ. App.) 217 S. W. 228; Medlenka v. Downing, 59 Tex. 32; Wurzbach v. Menger, 27 Tex. Civ. App. 290, 65 S. W. 679; Wynne v. Hudson, 66 Tex. 1, 17 S. W. 110; Hudgins v. Thompson, 109 Tex. 433, 211 S. W. 586.

Summarizing the evidence, and testing it by these propositions of law, we find that Langston abandoned the premises levied upon and formerly occupied by him as a homestead, rented it out, and exercised no use or control over it different from the use and control which owners ordinarily exercise over rented property. He derived a substantial income from the rented premises. He then occupied other property which he owned as the homestead of himself and family. So we submit that the trial court did not err in holding the premises levied upon to have lost its homestead character, and we therefore affirm the judgment.

Affirmed.