## W. R. THOMPSON & SONS LUMBER COMPANY V. MARY P. CLIFTON ET AL.

No. 7237. Decided February 1, 1939.
(124 S. W., 2d Series, 106.)

*Bradley & Bradley, L. W. Shepperd* and *L. L. Green,* all of Groesbeck, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the judgment debtor acquired a homestead interest in the expectancy of his father which property he was not occupying or using as his homestead at the time of his father's demise and which he did not occupy or use as his homestead after his father's death, where there was a previous judgment lien on record. Smith v. Chenault, 48 Texas 455; Crabtree v. Whiteselle, 65 Texas 111; Rettig v. West End Realty Co., (Com. App.) 254 S. W. 765.

*W. W. Mason,* of Mexia, for defendant in error.

An expectant estate that is occupied by the head of the family, used and enjoyed and held out by him as a homestead, is his homestead, and in the partition of the estate, in which he had an expectancy while occupying same as a homestead, the part that is set aside to him will be exempt to him as a homestead whether it was the same portion of the estate that was occupied by him before partition or not, and is exempt from any judgment lien filed against him after being impressed with the homestead character whether filed before or after partition of the estate. Hamm v. Brown, 29 S. W. (2d) 431; Dillard v. Duke, 107 S. W. (2d) 414.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

On June 1, 1931, Mrs. Mary P. Clifton, for herself and minor son, Roger Mack Adamson, instituted this suit in the District Court of Limestone County against W. R. Thompson & Sons Lumber Company, a partnership. Mrs. Clifton was the wife of R. Q. Adamson prior to and at the time of his death and Roger Mack is their son. The purpose of the suit is to enjoin the lumber company from undertaking to enforce a judgment lien as against a certain tract of 76 acres of land in Limestone County. The judgment lien is founded on a judgment recovered by the lumber company against R. Q. Adamson in his lifetime. It is claimed by Mrs. Clifton that the said tract of land constituted the homestead of R. Q. Adamson, her former husband, and herself and, therefore, same never became subject to the lumber company's judgment lien. The lumber company, in its answer to the suit, set up a cross action in which it sought the foreclosure of the judgment lien claimed by the company on said 76 acre tract. The case was tried before the court without a jury, and the trial court rendered judgment in favor of the lumber company for the foreclosure of the judgment lien as to an undivided half interest in said tract, but denied a foreclosure as to the other undivided half interest. The Court of Civil Appeals reversed the judgment of the trial court in the respect that it foreclosed the judgment lien as to an undivided interest in said tract, and rendered judgment in favor of Mrs. Clifton and her minor son. 100 S. W. (2d) 392. The lumber company has been granted the writ of error.

The record contains no statement of facts. According to the conclusions of fact filed by the trial court, the material facts are substantially as follows:

W. L. Adamson and his wife owned, in community, three tracts of land situated in Limestone County, aggregating approximately 600 acres. They had seven children, including R. Q. Adamson. In the year 1912, Mrs. Adamson died intestate. At the time of her death the home of herself and her husband was in the town of Mexia, and Mr. Adamson lived there the rest of his life. The three tracts of land mentioned above are disconnected from one another. One contained 90 acres; the second contained 76 acres (which is the tract in controversy); and the third contained approximately 434 acres. The 90 acre tract was fenced and had a dwelling house and other improvements on it. The 76 acre tract was fenced but had no other improvements on it, and it so remained up to the time this case was tried. The 434 acre tract was fenced and had other improve-

ments on it. In the year 1919, R. Q. Adamson, with his wife, and his minor son, who was at that time four years old, moved on the 90 acre tract and made their home there. This was done with the consent of the father and the acquiesence of the brothers and sisters of R. Q. Adamson. Thereafter, until the year 1922, R. Q. Adamson, with his family, occupied and used the 90 acre tract for a home and cultivated the land. In the year 1922, he rented out the 90 acre tract, and moved with his family to the town of Mexia for the purpose of putting his son through school there. He intended all the time to return with his family to his home on the farm as soon as his son got through school at Mexia. While in Mexia, the family lived in the home of a brother of R. Q. Adamson. They lived there until R. Q. Adamson died in the year 1928,—the son still being in school at that time. In the year 1925, the lumber company recovered a money judgment against R. Q. Adamson, and same was duly abstracted and registered to create a judgment lien as prescribed by statute. In 1926, W. L. Adamson died intestate, leaving his seven children surviving. In September 1927, the lands belonging to the community estate were partitioned. The partition was effected by agreement. In the partition, the 76 acre tract was apportioned to R. Q. Adamson. The 90 acre tract was apportioned to one of the other heirs. R. Q. Adamson never at any time used the 76 acre tract for home purposes. After same was apportioned to him in the partition, he rented same to tenants, but always intended to occupy same, with his family, as a home, as soon as his son got through school at Mexia. He made no improvements on the tract. However, he and his wife selected the building site for the contemplated dwelling house. In the year 1928, R. Q. Adamson died intestate, leaving his widow and son surviving. Shortly after his death, his widow bought a home in Mexia and she and her minor son have lived there ever since.

■ In order to reach a correct decision, it is necessary to consider the nature and extent of the homestead rights which accrued to R. Q. Adamson by the occupancy and use of the 90 acre tract as a home. This tract, as we have seen, was detached from the other two tracts, but constituted a part of the common lands made up of the three tracts in which he inherited an undivided one-fourteenth interest from his mother in the year 1912. As tenant in common, he had the right, subject to the coordinate rights of his cotenants, to take possession of the 90 acre tract in the year 1919 as he did, and use and occupy same as a home for his family. Such use and occupancy of said tract had effect, by operation of law, to impress his

undivided interest in the common lands with the homestead character and to exempt same from forced sale. Clements v. Lacy, 51 Texas 150; Jenkins v. Volz, 54 Texas 636; Brown v. McLennan, 60 Texas 43; Luhn v. Stone, 65 Texas 439; Young v. Hollingsworth, 16 S. W. (2d) 844 (Writ Ref.); Farmers' & Mechanics' Trust Co. v. Perry, 56 S. W. (2d) 501. We pause here to say that the facts of this case do not require us to decide whether or not, in view of the fact that the 90 acre tract was disconnected from the other two tracts and that neither of said two tracts was used for home purposes, the homestead exemption extended to more than 90 acres of the common lands. The 90 acre tract became the family home, in fact, by actual use and occupancy, and, under the facts of this case, maintained the homestead character up to September, 1927, when the partition of the common lands occurred. The temporary absence of the family from the place, for the purpose of putting the son through school at Mexia, did not constitute an abandonment of the place as the family home. During such absence, the place retained all the attributes of an established home in all respects the same as if the physical occupancy thereof had not been interrupted as it was. Henderson v. Texas Moline Plow Co., 109 Texas 466. When, therefore, the lumber company registered its judgment in the year 1925, the judgment lien did not attach to the undivided interest in the common lands which R. Q. Adamson had inherited from his mother. Nor did the judgment lien attach to the undivided interest which he inherited from his father in the year 1926, for the reason that this undivided interest, contemporaneously with the death of his father, became impressed with the homestead character which pertained to the 90 acre tract and, by operation of law, the homestead exemption extended to such undivided interest the same as it did in the first instance. Freiberg v. Walzem, 85 Texas 264, 20 S. W. 60. It so came about that in September, 1927, when the partition occurred, R. Q. Adamson owned an undivided two-fourteenth interest in the common lands, and this undivided interest lay under the protection of the homestead exemption provided by the Constitution. This protection was not removed by the localization of said undivided interest which was effected by the partition of the common lands but same remained effective as to the 76 acre tract in controversy which was apportioned to R. Q. Adamson. (See cases first cited above.) It would be illogical to say that the transformation, by partition, of an estate in common into divers estates in severalty defeats or impairs a duly effected dedication to homestead use—to the extent al-

lowed by the Constitution and the statutes—of the undivided interest of a tenant in common. With reference to the 76 acre tract in controversy, a re-dedication to homestead use was not required in order to preserve it from forced sale. In contemplation of law, the tract had been effectually dedicated to homestead use before the partition was made. Prior to the death of R. Q. Adamson, in the year 1928, the homestead character of said tract had not been lost by abandonment. The tract was, in the eyes of the law, the family homestead when Adamson died and, as such, descended to his widow and child free of his debts. 22 Tex. Jur. p. 336 et seq.

The judgment of the Court of Civil Appeals is in all respects affirmed.

Opinion adopted by the Supreme Court February 1, 1939.