J. R. WATKINS CO. v. DAWSON et al.

No. 4001.

Court of Civil Appeals of Texas. El Paso.

Nov. 14, 1940.

Rehearing Denied Dec. 12, 1940.

902

Crane & Crane, of Dallas, for appellant.

R. R. Smith, of Jourdanton, for appellees.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of Atascosa County. J. W. Dawson and wife, as plaintiffs, filed suit against J. R. Watkins Company, a corporation, and L. D. McAda, as sheriff, to enjoin them from selling under execution two certain tracts of land in Atascosa County. The property was alleged to be their homestead. Further, plaintiffs sought to cancel, as a cloud on their title to said two tracts, an apparent lien created by the filing of an abstract of judgment in the records of Atascosa County by defendant J. R. Watkins Company. Defendant J. R. Watkins Company joined issue, and by special plea asserted the validity of his judgment lien and his right to enforce same. Trial was to the court without a jury, judgment in favor of plaintiffs for the relief sought. Defendant J. R. Watkins Company duly perfected this appeal from the judgment.

The parties here will be designated as they were in the trial court.

Before considering this appeal on its merits there is a preliminary matter that should be disposed of. Defendant filed a motion in this court to withdraw the statement of facts for correction and to postpone submission. The motion was granted without notice to plaintiffs or their counsel, it appears, insofar as the clerk was ordered to file as a supplemental transcript of the evidence certain exhibits attached to the motion. The correction made in this manner can best be understood by reciting just how the original statement read as to the matter corrected.

On page 26 of the statement of facts this answer by the witness J. W. Dawson appears: "Yes, sir, me and him was talking about it at mother's place there and we agreed ~~he said~~ when we divided this property he would ~~like to~~ have the Devine property." The answer had reference to a conversation between witness and his brother. The words, "he said," were in typewriting and a line by pen drawn through them, and above them by pen was written, "we agreed." The words, "like to," were stricken out by pen. The correction made by the trial court was restoration of the words, "he said," the elimination of the words, "we agreed," and the restoration of the stricken words "like to." The answer as corrected read: "Yes, sir, me and him was talking about it at mother's place there and he said when we divided this property he would like to have the Devine property."

This correction was made by the trial court, apparently without notice to plaintiffs or their counsel. Plaintiffs filed motion asking that this court rescind its action and give them an opportunity for a hearing as to the matter of correction before the trial court.

The trial court is responsible for the certification of a proper record here. It might have been better for this court to have afforded plaintiffs an opportunity for a hearing before permitting the record to be corrected. It might have been better for the trial court to have afforded plaintiffs an opportunity to be heard in the correction, but there was considerable difficulty attendant on this, because all attorneys were nonresident. In our opinion the correction was of no great moment. On page 5 of the statement of facts the same witness testified as follows:

"Q. Did you ever have any understanding with any of the other members of the family about this property of your father's and mother's? A. Yes, with my brother.

"Q. And what was that understanding? A. Well, my brother—my brother was to take the Devine property and me and my three sisters was to take the ranch property."

Taken with the context, this testimony indicates that the witness was referring to the same time and same conversation or

transaction referred to in the other answer under consideration.

The trial was before the court, judgment for plaintiffs, and necessary findings to support same are to be attributed to the trial court, if sustained by substantial evidence. The court may have given credence to the testimony last quoted.

The motion of plaintiffs is overruled.

Let us first consider the undisputed facts. The 97.53-acre tract in dispute is a portion of the 311-acre tract which, at the time of the death of Brett Dawson, the father of plaintiff J. W. Dawson, was the community property of said deceased Dawson and his surviving wife, Betty Dawson, the mother of plaintiff Dawson. The rural homestead of plaintiff Dawson's father and mother was on this 311-acre tract. Brett Dawson died in 1918. He was survived by his wife, two sons and three daughters. His surviving wife occupied the land as a home until about 1924 when she bought a house in the town of Devine, Medina County, which she occupied as a home up to the date of her death in 1936. Mrs. Betty Dawson after the death of her husband remained a widow to her death. This new homestead was paid for in part, at least, from the community estate. After Mrs. Dawson left the said 311-acre farm in 1924 the rents and revenues thereof were largely devoted to her support up to her death. She died intestate, and plaintiff Dawson and another son and three daughters survived her and were her sole heirs.

By deed executed in October, 1936, the heirs of Betty Dawson partitioned her estate and the estate of their deceased father among themselves. Plaintiff received as his part the 97.53-acre tract in controversy here, a part of the 311-acre tract; his brother Jesse took the property in Devine as his entire portion of the estate; the three sisters each received respective portions of the 311-acre tract, and said tract was completely partitioned between the four children other than Jesse.

Plaintiffs have been husband and wife since December 16, 1903. In 1921 they acquired the 102-acre tract of land herein referred to in its relation to the 97.53 acres in controversy. The 102-acre tract is farm land and from its acquisition to the present time at all times same was used, occupied and cultivated as the homestead of plaintiffs and their family.

This 102-acre tract is located, on an airline, about three-quarters of a mile from the 97.53-acre tract in controversy here. By road it is about a mile and a quarter or a half therefrom. The 97.53-acre tract seems to have been pasture land with some timber thereon. Before the partition it was a part of a 130-acre pasture. Since the partition deed plaintiffs have used the 97.53-acre tract in connection with their homestead tract in such a manner as to constitute same a part of their homestead. If the evidence is not undisputed on this point, it is sufficient to sustain such a finding.

On the 12th day of June, 1934, in the County Court at Law of Dallas County, defendant recovered against plaintiff J. W. Dawson and others a judgment in the sum of $864.81, to bear interest from date at the rate of 6 per cent. per annum, together with all costs of suit. On the 18th day of August, 1934, execution to Dallas County issued thereon and same was placed in the hands of Louis Brown, Constable of Precinct No. 1, Dallas County. The constable's return thereon as copied in the statement of facts was as follows:

"Constable's Return

"Came To Hand This the 21st day of August, A.D. 1934, and executed this the 21st day of August, A.D. 1934, by property found in Dallas County, belonging to the defendant, subject to execution."

On the 22nd day of August, 1934, an abstract of this judgment was filed in the office of the County Clerk of Atascosa County and same was duly recorded and indexed. On the 24th day of February, 1939, from the Dallas County Court at Law an alias execution was issued to Atascosa County. It is the execution of this process that was halted by plaintiffs' suit. It does not appear from the return of the sheriff just what property of J. W. Dawson was levied on, but we presume it was the 97.53-acre tract.

In this case there can be no controversy save as to the 97.53-acre tract. The 102-acre tract was at all relevant times the homestead of plaintiffs, and under the Constitution exempt from the judgment of defendant. This being true, the finding which must be attributed to the trial judge to support the judgment rendered, in substance, is, that at all relevant times herein the 97.53-acre tract was a part of the homestead of plaintiffs. If there is evidence in the record sufficient to support such a finding, the judgment should be affirmed.

Plaintiff Dawson acquired his interest in the 311-acre tract, of which the land in controversy is a part, as an heir of his father, and then as an heir of his mother. Title vested immediately upon the death of each. R.S.1925, Article 3314. Unless the interest so acquired by plaintiff Dawson was exempt, the lien of defendant's judgment attached thereto. R.S.1925, Article 5449, Vernon's Ann.Civ.St. art. 5449. Brett Dawson, the father, died in 1918. From him plaintiff Dawson inherited an undivided one-tenth interest in the 311-acre tract, subject, of course, to the homestead interest of his mother in 200 acres thereof. The mother's homestead right terminated on or about 1924. His mother died in 1936, and he inherited a one-tenth interest in the property from her. The respective interests so acquired were held as a tenant in common with his brother and three sisters up to the partition in 1936. Unless the interest acquired from his father was exempt by reason of its being a part of plaintiffs' homestead at the time the abstract of defendant's judgment was filed, the lien thereof attached to such interest. Unless the interest acquired by him from his mother at the very moment same was acquired was actually being used as a part of his homestead, the lien of defendant's judgment attached thereto.

In consideration of the question of the homestead or non-homestead status of the property with reference to the abstracting of the judgment a number of questions arise. Some of these are:

(1) May an undivided interest be dedicated as a homestead?

(2) What acts are necessary to dedicate as a part of an established homestead a subsequently acquired detached tract?

(3) If a homestead may be acquired on an undivided interest in the tract of land, then what is the status of an additionally acquired interest in the same tract?

(4) If a homestead be dedicated on an undivided interest and thereafter the land be voluntarily partitioned among the cotenants, then what is the status of the property received by the one establishing the prior homestead in the undivided interest?

In the case of Tucker v. Dodson, Tex.Civ.App., 245 S.W. 728, 730, the following statement of the law relative to a homestead in an undivided interest is made: "That a homestead may be established upon land held by tenancy in common, provided the just rights of cotenants are not prejudiced, is well settled by the decisions in this state." Clements v. Lacy, 51 Tex. 150; Jenkins v. Volz, 54 Tex. 636; Southwestern Mfg. Co. v. Swan, Tex. Civ.App., 43 S.W. 813; Lewis v. Sellick, 69 Tex. 379, 7 S.W. 673; Powell v. Ott, Tex.Civ.App., 146 S.W. 1019.

This, we believe to be a correct statement of the law, amply sustained by the authorities cited. As additional authority might be cited the case of Griffin v. Harris et al., 39 Tex.Civ.App. 586, 88 S.W. 493. This case, in our opinion, has great bearing on many of the issues posed by this appeal.

From the moment the title vested by the death of the father, Brett Dawson, his children and his surviving wife were tenants in common. It is to be borne in mind that the property exceeded the homestead right of the surviving wife by over one hundred acres; likewise, that in 1925 or 1926 the mother abandoned her homestead and dedicated a new homestead in Devine. At all relevant times there was the right of a joint possession in plaintiff Dawson.

The Constitution, Vernon's Ann.St. provides: "The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon." Sec. 51, Article 16.

Property is dedicated as a homestead by the use thereof as such. In a rural homestead exemption is comprehended a residence and business homestead exemption. Therefore, the dedication consists of the use of a part of the tract for a residence and the use of the balance for the support of the family. Autry v. Reasor, 102 Tex. 123, 108 S.W. 1162, 113 S.W. 748.

In the course of the opinion in the above case Chief Justice Gaines said: "It is clear, therefore, we think, before a homestead can be claimed upon land, it must be used for some one purpose of a home, either by cultivating it, using it directly for the purpose of raising family supplies, or for cutting firewood and such like."

This language was used with reference to a tract detached from the indisputably dedicated homestead by something like three-quarters of a mile. Likewise, we think, it is fairly inferable from the case

that very slight evidence of use is sufficient to raise the issue. Despite the fact that apparently the trial court had rendered an incorrect judgment on the findings of fact, the case was reversed and remanded. As found by the trial court, the only use of the detached tract was renting 'same out to produce an income for the support of the family. There being some evidence that at some time the homestead claimant had cultivated the detached tract in question, the case was reversed and remanded and not reversed and rendered.

From the date of the death of his father, Brett Dawson, and shortly after the death of his mother, plaintiff Dawson seems to have made about the same use of the 311-acre tract, or a portion thereof. He, as likewise did some of the other heirs, used regularly the uncultivated portion for the pasturage of his stock; he cut firewood and posts thereupon.

Plaintiff Dawson was the only witness testifying, and, giving his testimony full credence and a broad interpretation, a rather continuous use of the property in question in connection with the 102-acre tract and the subsistence of his family may be inferred. This interpretation, unquestionably, the trial court had the authority to give the testimony. After the partition plaintiff fenced the 97.53-acre tract, making about the same use thereof, however, as he had previously done.

We think that the evidence was sufficient to sustain a finding that the lien of the judgment never attached to the one-tenth interest inherited by plaintiff from his father. This, because it had been dedicated as a part of the homestead prior to the abstracting of the judgment.

A homestead right attaching to an undivided interest in property, that right survives partition and attaches to the property received in partition. Thompson & Sons Lbr. Co. v. Clifton, 132 Tex. 366, 124 S.W.2d 106, and authorities there cited.

Defendant's judgment was abstracted in Atascosa County at the time plaintiff Dawson inherited an undivided one-tenth interest in the property from his mother.

The case of Freiberg, Klein & Co. v. Walzem, 85 Tex. 264, 20 S.W. 60, 34 Am.St.Rep. 808, held that an abstract of judgment did not create a lien on the homestead subsequently acquired if the homestead was dedicated at the moment of its acquisition.

The case of Thompson & Sons Lbr. Co. v. Clifton, supra, is to our mind conclusive here. In that case the doctrine announced in Freiberg, Klein & Co. v. Walzem, supra, was applied to an additional interest acquired by inheritance where there had been a prior homestead dedicated in an undivided interest.

Assuming the correctness of what we have heretofore said, that case applies here.

It is ordered that the judgment be in all things affirmed.