PYLAND et al. v. SAYERS.

No. 8990; Motion No. 9521.

Court of Civil Appeals of Texas. Austin.

Dec. 31, 1940.

Rehearing Denied Feb. 26, 1941.

Tom Gambrell, of Lockhart, for appellant.

T. C. Johnson, Jr., of San Marcos, for appellees.

BAUGH, Justice.

Thomas G. Sayers, independent executor of the estate of Jessie A. Sayers, deceased, sued S. J. Pyland, his wife, Nellie A. Pyland, and two sons, S. S. and M. C. Pyland, upon a promissory note for $3,000, and to foreclose a vendor's lien given to secure it on certain described property situated in San Marcos, Texas. The two sons denied liability on the note, and disclaimed any interest in the property; and S. J. Pyland and wife defended, among other things, on the ground that the property involved was, when the lien was created, and continuously thereafter had been, their business homestead; and that the lien asserted was valid only as to a half interest therein, and asked that foreclosure be limited to such half interest only. Trial was to the court without a jury and judgment rendered as prayed for, from which S. J. Pyland has appealed.

No complaint is made as to the personal judgment against Pyland for the debt involved, nor the foreclosure of the lien in so far as a half interest in the property is concerned. The only question raised relates to the other half interest. It is here contended that the lien asserted as to such half interest by appellee is void because it was attempted to be fixed upon a homestead interest of Pyland and wife in the property, and for a purpose not authorized by Sec. 50, Art. 16 of the Constitution, Vernon's Ann.St., and Art. 3839, R.C.S. 1925.

The material facts involved are without substantial controversy. While appellee urges that the trial court could have found from the evidence that the Pylands had, subsequent to the transaction in question, abandoned whatever homestead rights they may have had in the property, our present consideration of the question presented is predicated upon a continuing homestead

right; and the question of abandonment will be subsequently discussed. The facts and circumstances under which the controversy arose were briefly as follows:

In 1925, S. J. Pyland owned lots 4 and 5 in Block 16 of the City of San Marcos, the two fronting north on San Antonio Street a distance of 158½ feet and extending back 166⅔ feet, lot 4 on the east, being a corner lot, bordering upon Fredericksburg Street. A business house, claimed by Pyland as his business homestead, fronted 100 feet on San Antonio Street, and extended back 100 feet, thus occupying all of the front of lot 5 and a part of the front of lot 4, leaving as vacant property the east 58½ feet of lot 4 on the street corner. There were then outstanding purchase money notes, aggregating $1,187.50 against lot 4, secured by a lien upon that lot. No indebtedness against lot 5 is shown to have existed at that time. On February 28, 1925, Pyland and wife sold and conveyed to T. Z. Williams an undivided one-half interest in both lots 4 and 5. The consideration for this conveyance was that Williams assume one-half of the $1,187.50 against lot 4, execute to Pyland a note for $3,000 secured by a vendor's lien on the one-half interest conveyed to him, and a note for $2,648.34, secured by a lien inferior to that securing the $3,000 note. The $3,000 note was then by Pyland transferred to Jessie A. Sayers. In 1927 Pyland and Williams executed a partition deed, whereby there was set apart to Williams the vacant portion of lot 4, fronting 58½ feet on San Antonio Street, and extending back along Fredericksburg Street a distance of 140 feet; and to Pyland all of the remainder of lots 4 and 5 upon which were situated all of the improvements. At that time there was outstanding against said property a total indebtedness of $6,835.84, as follows: $1,187.50 against lot 4, payment of one-half of which Williams had assumed when he bought the one-half interest from Pyland; the $3,000 note owned by Sayers; and the $2,648.34 note, one-half of which was owned by Mrs. Pyland as guardian of the estate of Homer Wimberly, and the other half by S. J. Pyland. The last two mentioned purchase money notes, aggregating $5,648.34, were owed by Williams and their payment secured by liens on his one-half interest in the entire property. In brief, Williams then owed, secured by liens on his one-half interest in

the entire property, a total of $6,242.09. The net result of the partition agreement was to reduce this indebtedness owed by Williams to $2,056.25 and to fix a lien on the 58½ feet by 140 feet set apart to him. We are not here concerned with the question of whether this could be done without the consent of the holders of the notes, as that issue is not raised by them.

This partition deed also provided that in consideration of the property set apart to S. J. Pyland and wife, Pyland assumed the payment of the $3,000 note held by Sayers, and further that "it is expressly agreed and understood that the $3,000 note shall constitute a valid purchase money or vendor's lien upon and against the said property so set apart herein to the said S. J. Pyland and wife."

It is not controverted that all of the parties acted in good faith, and that there was no intent to circumvent the homestead law. It is also the contention of appellee that in the partition whereby Pyland obtained the major portion of the property and all of the improvements, much greater in value than the portion set apart to Williams, in adjusting their equities and in equalizing the values of the property set aside to each, the indebtedness (the $3,000 note) assumed by Pyland should be treated as a vendor's lien note, and that the lien should extend to all the property set apart to Pyland. That is, as between cotenants where a lien exists only against the moiety of one, and a partition is affected whereby the other assumes the outstanding debt, the conveyance to him thus creates a lien against the entire property so conveyed to him. If this be done with the consent of the holder of the indebtedness, and absent any homestead question, this contention would be correct. Such seems to be the recognized rule. See 43 Tex.Jur., § 265, p. 460; 47 C.J., § 29, p. 276; Ann. 93 A.L.R. 1268. In none of these authorities, however, was a homestead question presented. And had none been here involved such rule would have been applicable. But manifestly, we think, such rule cannot create or fix an additional lien upon a homestead to secure a debt which it did not theretofore secure, except for the purposes authorized by the Constitution and the statute.

On the issue presented, we think it is immaterial, in so far as the Pylands' homestead rights were concerned, how the

partition between them and Williams was effectuated. It is now settled that they could hold and assert a homestead right in their one-half undivided interest in the property. Bielss v. Moeller, Tex.Civ.App., 83 S.W.2d 1098, 1101; Boone v. McBee, Tex.Civ.App., 280 S.W. 295; Thompson & Sons Lumber Co. v. Clifton, 132 Tex. 366, 124 S.W.2d 106; 22 Tex.Jur., § 167, p. 240. As such homestead it was exempt from any encumbrance save those authorized by law. The lien securing the Sayers' note originally extended only to the one-half interest conveyed by Pyland to Williams. And when Pyland reacquired the interest of Williams in the portion set aside to Pyland, he merely assumed payment of an already existing debt secured by a lien to the extent of a one-half interest only. To hold that he could thus, by such assumption, enlarge that lien to cover his homestead interest, would result in creating an additional lien on his homestead to secure an existing indebtedness which it had not theretofore secured. It is now settled that to that extent such an asserted lien is void and unenforceable. Andrews v. Security Nat. Bank, 121 Tex. 409, 50 S.W.2d 253, 83 A.L.R. 44; 22 Tex. Jur., § 210, p. 300. If the attempted enlargement of the original lien were void, as it manifestly was, any renewal or extension of it would be equally ineffective.

 Appellee urges in support of the trial court's judgment, however, that the court could have found that S. J. Pyland and wife, by the execution on May 10, 1937, of a deed to said property, conveying same to their sons, M. C. and S. S. Pyland, on the recited condition that they pay off and discharge all indebtedness against said property, and the recording thereof by the grantors on May 2, 1938, they abandoned said property as their homestead. The uncontradicted testimony of S. J., S. S., and M. C. Pyland was, however, that neither of the boys lived in San Marcos; that they knew nothing of the execution of said deed until after this suit was filed; that it was never delivered to either of them; that neither of them ever agreed to pay any of said debts, nor were they ever consulted about them by their father. Appellee contends that since all of them were interested parties the trial court had a right to disbelieve their testimony and that without their testimony the registration of the deed constituted prima facie evidence of its delivery. 14 Tex.Jur., § 74, p. 838.

Such prima facie presumption is, however, rebuttable. Delivery of a conveyance, or its acceptance by a grantee, particularly where it imposes an obligation upon the grantee, is essential to make it effective as a conveyance. While the rule of evidence is well settled that the testimony of an interested witness is not conclusive on the fact issue involved, and may be disbelieved; it is also true that where testimony of such witnesses is uncontradicted, clear, positive, and unequivocal, and there is no evidence tending to impeach or discredit such testimony, it cannot be disregarded and a judgment rendered contrary to it. See Great Southern Life Ins. Co. v. Dorough, Tex.Civ.App., 100 S.W.2d 772, 776; Heiner v. Homeland Realty Co., Tex.Civ.App., 100 S.W.2d 793, 796, and numerous authorities cited in both cases. Also 17 Tex.Jur., § 418, p. 926. Especially is this true where there is evidence tending to corroborate such testimony. In the instant case the witness McKie testified that J. S. Pyland had at all times continuously occupied and used a part of said premises to conduct his business; and the deed itself recited that S. J. Pyland and wife reserved the "exclusive management and control of said property during their lifetime." Under these circumstances, the trial court was not authorized to hold that the purported deed and its registration constituted an abandonment by Pyland of said property as a homestead.

 We are not prepared to say, however, that appellant was entitled to claim all of the property involved, as his business homestead. The record discloses that the entire business building fronted 100 feet on San Antonio Street; but that it was divided into two separate units, separated by a partition wall extending their entire length, the room to the west being 60x100 feet; and that on the east being 40x100 feet. There was also on the rear of lot 4, and back of the lot conveyed to Williams in the partition, a small residence which had been habitually leased by Pyland for revenue purposes, and not used in connection with his business. Also that in recent years he had used for his business purposes only the west 60x100-foot room and had rented out to others the 40x100-foot room to the east thereof.

As to the portion of lot 4 on which the residence was located which was clearly severable from the property used as a business homestead, and not used as a part of

the business homestead, nor in carrying on Pyland's business, a homestead claim would not lie. Harston v. Langston, Tex.Civ. App., 292 S.W. 648, 649, writ refused. Whether or not the 40x100-foot room was so constructed that it could be segregated from the 60x100-foot room which latter room appellee contends constituted appellant's business homestead, if any he had, as a separate and distinct building and which could be abandoned as a part of the business homestead, while the 60x100-foot room continued to be used as such homestead, the record does not sufficiently disclose; and we express no opinion on that question.

For the reasons stated the judgment of the trial court must be reversed and the cause remanded for another trial.

Reversed and remanded.

On Appellee's Motion for Rehearing.

In his motion for rehearing, in addition to his insistence that his lien, by virtue of the partition deed, extended to and covered all of lots 4 and 5, appellee urges: (1) That since the evidence showed that Pyland had abandoned any homestead claim to at least a part of lots 4 and 5, as to such abandoned portions the trial court's judgment should be affirmed; and (2) that his cross-assignments of error, that the trial court erred in refusing to sustain his general demurrer and special exceptions setting up the insufficiency of Pyland's pleas of homestead, should have been sustained.

■ By both pleading and proof in the court below appellee sought to establish and foreclose his lien on the entire property on two grounds: First, that his lien existed on the whole property under the facts pleaded, regardless of any homestead character of said property; and, second, that by the conveyance to their sons and the registration of that deed, S. J. Pyland and wife abandoned their entire homestead interest in said property. Nowhere do we find any pleading that the Pylands had abandoned a part of said property as their homestead by renting or non user thereof as such. While there was testimony from which the court could have found abandonment of a part thereof as homestead, his judgment was 'not based upon any such finding; and if sustainable as to part, the proof was not sufficiently clear and explicit as to such portion here claimed to have been abandoned, that this court could

properly segregate it. Nor can we say, in view of the theory on which the case was tried below, that there was conclusive proof of abandonment to a definite portion of said property. See 22 Tex.Jur., § 77, p. 111.

■ Appellants' plea of homestead was, we think, sufficient as against the exceptions made. In general, appellant pleaded that he was 64 years of age, with a wife and family; that he had for 30 years used and occupied these premises in conducting his business, describing it; that said property was adapted to that purpose; that he had no other place or way in which he could earn a livelihood; and that he had had during such period, and now has, no other place of business in San Marcos or elsewhere. Such allegations were, we think, sufficient allegations of facts to meet the rules of pleading of homestead exemption laid down in 22 Tex.Jur., § 18, p. 34.

Appellee's motion is therefore overruled.

Overruled.