D. R. FIEW, et al., Appellants,

v.

T. J. QUALTROUGH, et al., Appellees.

No. 1851.

Court of Appeals of Texas, Corpus Christi.

Oct. 29, 1981.

Rehearing Denied Nov. 19, 1981.

Larkin T. Thedford, Edna, for appellants.

L. L. Duckett, Duckett, Bouligny & Collins, El Campo, for appellees.

Before NYE, C. J., and UTTER and KENNEDY, JJ.

## OPINION

KENNEDY, Justice.

This is a will contest. In 1949, James R. Fiew and Mary Frances Fiew, husband and wife, executed a will, contained in one instrument, which made the essential disposition as follows:

"It is our will and desire that the survivor of us, JAMES R. FIEW or MARY FRANCES FIEW, as the case may be, shall, with the rights and authority below given, have all the estate of every description, real, personal or mixed, which either or both of us may own, to be used, occupied, and enjoyed during the life of such survivor, and that upon the death of such survivor all of such estate shall be the property of our beloved niece, RUBY JEAN FIEW."

At the time of James' death in 1950, the estate consisted of some personal property and an 85.5 acre tract of land in Jackson County (the subject matter of the instant suit), all of which was community property. The will was probated and Mary Frances was named as executrix. The devisee, Ruby Jean Fiew Qualtrough, died in 1972, during the lifetime of Mary Frances. Mary Frances wrote a new will in 1972, which made no specific mention of the realty, and in 1976, conveyed to D. R. Fiew, appellant herein, "all of my undivided one-half interest in and to" the 85.5 acres. Mary Frances died in 1978. This suit was brought by appellees, the heirs of Ruby Jean Fiew Qualtrough, to recover the one-half interest in the realty conveyed to appellant.

The 24th District Court, Jackson County, Honorable Frank H. Crain, Presiding, rendered judgment decreeing the 1949 will of James and Mary Frances to be joint, mutual and contractual, vesting in the survivor a life estate, remainder in Ruby Jean Fiew Qualtrough; that the attempted conveyance to appellant is void and of no force or effect; and that a constructive trust be imposed upon the realty in behalf of appellees. We affirm.

■ In his first point of error, appellant, without conceding the contractual nature of the instrument, asserts that there is no consideration supporting the alleged contractual provision in the will that each spouse was to have a life estate in all of the property. Appellant contends that since Mary Frances was already entitled to the use and occupancy of the tract for the remainder of her life as part of her Constitutional homestead rights, there was no binding contract between the parties. Appellant cites to this Court the rule in the case of *Hill v. Aldrich*, 242 S.W.2d 465 (Tex.Civ.App.—San Antonio 1951, writ dism'd), that no contract between parties can be had creating a legal right which legal right is already owned by the contracting party.

We must first establish that the will in question is in fact a joint and mutual will. Language almost identical to that quoted above was recently construed by this Court in the case of *Baugh v. Myers*, 620 S.W.2d 909 (Tex.Civ.App.—Corpus Christi, 1981, writ pending). In his opinion holding that the surviving spouse was contractually obligated to dispose of the property according to the terms of the instrument, Justice Young wrote:

"A joint and mutual will creates contractual obligations between the signing parties to dispose of the property according to the plan. *Nye v. Bradford*, 144 Tex. 618, 193 S.W.2d 165 (1946). This key distinction of the mutuality of obligation imposed on the surviving spouse to dis-

pose of property according to the will is irrevocable upon the death of one spouse. [Citation omitted] . . . It was clearly the intent of the parties, by the very terms of the will, to make a testamentary contract to which both parties would be bound. [Citations omitted]."

We hold that the will in this case was joint and mutual.

While there is no real evidence in the record concerning Mary Frances Fiew's homestead rights in the property, we will assume, for argument's sake, that such a valid claim existed. (Certainly any other assumption would render appellant's contention fruitless.)

 An examination of two factors indicates that appellant's argument is without merit. First, a homestead right is not a life estate in the pure sense of that term. Rather, "though not an estate in realty, [it] nevertheless *partakes of the nature* of an estate for life. . . ." *Jones v. Dewbre*, 13 S.W.2d 233, 234 (Tex.Civ.App.—Austin 1928, no writ) (emphasis supplied). This treatment of the homestead estate as a life estate lasts so long as the property retains its homestead character. *Sparks v. Robertson*, 203 S.W.2d 622, 623 (Tex.Civ.App.—Austin 1947, writ ref'd). The homestead character, and the homestead right, can be lost through abandonment. E. g., *Rancho Oil Co. v. Powell*, 142 Tex. 63, 175 S.W.2d 960, 963 (Tex.1943); *La Brier v. Williams*, 212 S.W.2d 828, 830 (Tex.Civ.App.—San Antonio 1948, writ ref'd n.r.e.); *McDaniel v. Thompson*, 195 S.W.2d 202, 203 (Tex.Civ. App.—San Antonio 1946 writ ref'd). Thus, it cannot be said that the estate in the nature of a life estate to which Mary Frances Fiew would have been entitled was indefeasibly vested as was the true life estate created in the will executed with her husband. While the two ran concurrently, it is obvious that she received an estate in the land as a result of the will to which her Constitutional homestead rights would not have entitled her.

 Additionally, the will provided that the survivor of James or Mary Frances Fiew was to have a life estate in all perso-

nalty as well. Again, an estate was created to which the survivor would not otherwise have been entitled, since, prior to that time, either spouse was free to dispose of their respective interests in the personalty, be it separate or community property, as they may have seen fit. Certainly the survivor would have had no Constitutional homestead rights in the personalty. To hold as appellant urges, therefore, would require this Court to view the contractual obligations in the will, i. e., the creation of a life estate in the realty and the creation of a life estate in the personalty, as severable; one supported by consideration, the other not. The will treats the property of the testators as one. *Nye v. Bradford*, 144 Tex. 618, 193 S.W.2d 165, 168 (1946). We therefore decline to so hold. For these two reasons, we overrule appellant's first point of error.

In his second and final point of error, appellant attacks the judgment of the trial court in that it decreed that the devise to Ruby Jean Fiew Qualtrough had not lapsed upon her predeceasing Mary Frances. Simply put, appellant urges that the anti-lapse statute is applicable only to a "child or other descendant" of the testator. Tex. Prob.Code Ann. § 68. Appellant cites this Court to the case of *Najvar v. Vasek*, 564 S.W.2d 202 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.), authored by Chief Justice Nye, in which it is stated:

"Where there is no general residuary clause in the will, (as in this case), in order to prevent a lapse, the testator must declare, either expressly or in terms from which it can be determined, what person or persons he intended to substitute for the legatee or devisee dying during his lifetime. The terms of the will must clearly show that the testator intended that the gift should not lapse. . . ."

Appellant argues, therefore, that neither of these conditions having been met, the gifts to Ruby Jean clearly lapsed upon her death.

 The instant case is fundamentally different from the *Najvar* case in which the

devise was from a lone testator to his brother (as remainder devisee), which brother predeceased the testator. In the instant case, the will was joint and mutual as previously stated herein. Under a joint and mutual will of a husband and wife in which property is devised to the survivor for life, then devised to a specified devisee upon the death of the survivor, that subsequent devisee is a remainderman whose interest becomes vested upon the death of the first spouse and the probating of the will and acceptance of the provisions thereof by the surviving spouse. *Chadwick v. Bristow*, 146 Tex. 481, 208 S.W.2d 888, 890–91 (1948). The remainder so created is not contingent upon the remainderman's survival of the surviving spouse. Id. at 891. Nor is this rule upset by the fact that, as in this case, the remainderman was a collateral heir of the testators. A similar fact situation was presented in *Dalton v. Pruett*, 483 S.W.2d 926 (Tex.Civ.App.—Texarkana 1972, no writ). In that case, the remaindermen were the children of the testatrix by a former marriage. One of the children died in the interim between the deaths of the parents, leaving a widow. The court, applying the rule set out in *Chadwick v. Bristow*, held that the title to the property vested in the children upon the death of the first spouse, subject to the life estate of the surviving spouse. Since the gift to the deceased child had not lapsed by virtue of the fact that he predeceased the surviving testator, his share passed to his widow, even though she was a collateral heir. 483 S.W.2d at 929. In the instant case, as in *Dalton*, the anti-lapse statute need not come into play in order to determine the viability of the gift.

Appellant's second point of error is overruled, and the judgment of the trial court is AFFIRMED.