Melissa L. **LASTER**, Petitioner,

v.

**FIRST HUNTSVILLE PROPERTIES COMPANY**, Respondent.

No. D–0537.

Supreme Court of Texas.

Dec. 11, 1991.

Rehearing Overruled April 22, 1992.

John E. Wright, Huntsville, for petitioner.

E.M. Schulze, Jr., Huntsville, for respondent.

## OPINION

COOK, Justice.

This case presents the question whether one ex-spouse who, pursuant to a consent decree of divorce, holds a future interest in property subject to the homestead right of the other ex-spouse, can mortgage that interest. We hold that such an interest can be validly mortgaged. For the following reasons, the judgment of the court of appeals is affirmed and this cause is remanded to the trial court for a determination of the rights of the parties.

### I

When Melissa and Richard Laster divorced in 1976, they entered into an agreed judgment which, among other things, divided the couple's property. Under the decree, Melissa was given a 73.83 percent interest in the community property residence and Richard was given the remaining undivided 26.17 percent interest. Melissa and the children were also given the right to the use and occupancy of the residence

until the younger of the two children reached eighteen years of age or was no longer in school.

This right in the residence was further made subject to Melissa making the monthly payments on the residence, maintaining the premises, and ensuring that any absence from the residence did not exceed three years. The judgment provided that at the occurrence of one or more of these conditions, Melissa's right of use and occupancy of the residence would terminate and the rights of the parties in the property would be determined in accordance with their interests as set out in the judgment. Melissa currently remains in sole possession of the residence.

In 1979, Richard executed a deed of trust conveying his interest in the residence to secure payment on a promissory note, upon which he later defaulted. Richard's interest was sold by substitute trustee's deed in 1981 to the First National Bank of Huntsville, which later sold the property to First Huntsville Realty Corporation in 1983. First Huntsville Properties purchased the property from First Huntsville Realty in 1985. The couple's youngest child turned eighteen in 1988, and First Huntsville Properties filed suit seeking to partition the residence in 1989. In Melissa's answer, she alleges the entire property was, both at the time the deed of trust was executed and at the time suit was filed, subject to her homestead interest in the entire residence. Thus, she claims, the residence is protected from forced sale.

A bench trial was had and the trial court rendered judgment holding that: the residence was protected from forced sale by Melissa's continuing homestead right in the entire residence; the continuing homestead right was paramount to First Huntsville's interest in the property; and the writ of partition was thereby denied as "premature." The court further stated that in light of its holding, it was unnecessary to determine the question of the parties' respective interests in the residence. In the findings of fact and conclusions of law filed later, however, the court stated that First Huntsville Properties had acquired title to Richard's 26.17 percent interest in the residence "subject to the right of occupancy of Melissa L. Laster."

First Huntsville Properties appealed, claiming that Melissa no longer had a homestead right which extended to its undivided interest in the property at the time the partition action was filed and, therefore, partition should be granted. The court of appeals reversed the trial court's judgment, holding that the trial court erred in not partitioning the residence because First Huntsville's interest in the property which was held in cotenancy with Melissa, was paramount to her homestead right. 797 S.W.2d 151 (Tex.App.1990). Melissa appeals from that judgment.

II

Melissa argues the court of appeals erred both when it held that a cotenant's right to seek partition was paramount to another cotenant's homestead rights, and when it did not find that the mortgage executed by Richard was void because it was levied against homestead property to secure general indebtedness. We turn first to the issue of what relation the parties bear to one another in regards to the residence.

A

The court of appeals found that Melissa and Richard held their respective interests in the residence as "joint owners," with Melissa retaining a homestead interest in the whole until the younger of the two children reached eighteen. The court also determined that, by way of Richard's mortgage, Melissa and First Huntsville now hold the residence as tenants in common. The court of appeals did not discuss whether the mortgage was void under Texas homestead laws. Although we agree that First Huntsville and Melissa are now cotenants in the residence, we disagree with the court's reasoning in reaching this result.

■ The term "joint owner" is utilized in the statute which authorizes partition of jointly held property. *See* Tex.Prop.Code § 23.001. This term, however, is imprecise because its use does not signify any one type of ownership. The term has, in the

past, been used to refer both to property held in joint tenancy, *see Stauffer v. Henderson,* 801 S.W.2d 858 (Tex.1990), and property held in cotenancy. *See Harrell v. Harrell,* 692 S.W.2d 876 (Tex.1985) (per curiam). In the context that the term is used by the court of appeals in the instant case, it appears the court considered Melissa and Richard to be tenants in common in the residence. This classification is incorrect.

■ A cotenancy is formed when two or more persons share the unity of exclusive use and possession in property held in common. 4A R. Powell & P. Rohan, *Real Property,* ¶ 601[1] (1991); 2 H. Tiffany, *Real Property,* § 319 (3rd ed. 1939). The present right to possession of the property is essential because one who is never entitled to possession of property held in common is not a cotenant. *Reed v. Turner,* 489 S.W.2d 373, 381 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.); *LeBus v. LeBus,* 269 S.W.2d 506, 510 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.). Therefore, Melissa and Richard did not hold the residence as tenants in common because the divorce decree gave Melissa the right to the use and possession of the residence to the exclusion of Richard.

■ In Texas, the homestead right constitutes an estate in land. *Woods v. Alvarado State Bank,* 118 Tex. 586, 593–94, 19 S.W.2d 35, 37–38 (1929). This estate is analogous to a life tenancy, with the holder of the homestead right possessing the rights similar to those of a life tenant for so long as the property retains its homestead character. *Fiew v. Qualtrough,* 624 S.W.2d 335, 337 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Sparks v. Robertson,* 203 S.W.2d 622, 623 (Tex.Civ.App.—Austin 1947, writ ref'd). Although the homestead estate is not identical to a life estate because one's homestead rights can be lost through abandonment, "it may be said that the homestead laws have the ef-

fect of reducing the underlying ownership rights in a homestead property to something akin to remainder interests and vesting in each spouse an interest akin to an undivided life estate in the property." *United States v. Rodgers,* 461 U.S. 677, 686, 103 S.Ct. 2132, 2138, 76 L.Ed.2d 236 (1983).

■ Therefore, the divorce decree created in Melissa rights in the residence analogous to those of a life tenant, and created in Richard a future interest in the residence similar to that held by a vested remainderman.[1] *See generally Guilliams v. Koonsman,* 154 Tex. 401, 406, 279 S.W.2d 579, 582 (1955) (setting out the rule used to determine whether a remainder interest has vested); *Medlin v. Medlin,* 203 S.W.2d 635, 641 (Tex.Civ.App.—Amarillo 1947, writ ref'd) (a remainderman's interest in property is usually vested). It is undisputed that at the time Richard mortgaged his interest in the residence, the property as a whole was designated as Melissa's homestead. The question arises, then, whether the mortgage executed by Richard against his interest in the residence is void under the Texas homestead laws.

### B

■ The homestead of a single adult or family is protected from forced sale for the payment of a debt unless the debt is for purchase money on the homestead, for work and materials used to construct improvements on the homestead property, or for unpaid taxes. Tex. Const. art. XVI, § 50; Tex.Prop.Code § 41.002. Any attempt to mortgage homestead property, except as approved by the Texas Constitution, is void. *Burkhardt v. Lieberman,* 138 Tex. 409, 159 S.W.2d 847, 850 (Tex. Comm'n App.1942, opinion adopted); *Anglin v. Cisco Mortgage Loan Co.,* 135 Tex. 188, 193, 141 S.W.2d 935, 937 (Tex.1940); *Toler v. Fertitta,* 67 S.W.2d 229, 230–31

---

1. The homestead interest in this case could also be analogized to an estate for years, with Richard's future interest in the property similar to an executory interest. *See Villarreal v. Laredo National Bank,* 677 S.W.2d 600, 606 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). The distinctions between a vested remainder and an executory interest, however, are virtually nonexistent. *See* T. Bergin & P. Haskell, *Preface to Estates in Land & Future Interests,* 115 (2nd ed. 1984).

(Tex.Comm'n App.1934, judgm't adopted). A mortgage or lien that is void because it was illegally levied against homestead property can never have any effect, even after the property is no longer impressed with the homestead character. *Toler,* 67 S.W.2d at 230–31.

 This homestead protection, however, can arise only in the person or family who has a present possessory interest in the subject property. *See Inwood North Homeowners' Assoc., Inc. v. Harris,* 736 S.W.2d 632, 636 (Tex.1987); *Greene v. White,* 137 Tex. 361, 380, 153 S.W.2d 575, 586 (1941); *Gann v. Montgomery,* 210 S.W.2d 255, 258 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.). Accordingly, one who holds only a future interest in property with no present right to possession is not entitled to homestead protection in that property.[2] *See Rettig v. Houston West End Realty Co.,* 254 S.W. 765, 768 (Tex. Comm'n App.1923, judgm't adopted); *Massillon Engine & Thresher Co. v. Barrow,* 231 S.W. 368, 369–70 (Tex.Comm'n App. 1921, judgm't adopted).

 Applying this rule to the present situation, no homestead right arose in Richard's interest in the residence because he held only a future right to possession in the property subject to Melissa's homestead rights. It has long been the rule that the holder of a vested future interest in property can mortgage or alienate that interest. *See, e.g., Estes v. Estes,* 267 S.W. 709, 711 (Tex.Comm'n App.1924, judgm't adopted); *Caples v. Ward,* 107 Tex. 341, 345, 179 S.W. 856, 857–58 (1915). Since Richard held no protective homestead right which would prevent the mortgage of his interest, we now turn to the issue of whether Melissa's homestead right in the entire property served to invalidate the mortgage. The case of *Johnson v. Prosper State Bank,* 125 S.W.2d 707, 709–11 (Tex.Civ.App.—Dallas 1939), *aff'd,* 134 Tex. 677, 138 S.W.2d 1117 (1940), is instructive on this point.

In *Johnson,* a bank properly abstracted a judgment rendered for the non-payment of a note for general indebtedness against the real property interests the debtor owned or would obtain in the future. *Id.* at 708. The abstract was perfected in 1934. In 1929, the debtor's mother had died intestate, causing certain real estate to pass to the debtor subject to his father's continued homestead interest in the property. The debtor's father died in 1935, and the property passed to the debtor under his father's will. *Id.*

In 1936, the bank sought a writ of partition against the debtor's inherited land for the payment of the abstracted judgment. The debtor argued that the bank had no interest in the inherited property because the lien had been placed on homestead property. *Id.* at 709. The court held that a homestead right could not exist on his interest in the property at the time the lien attached, because a future estate "whether vested or contingent, will not support a claim of homestead, irrespective of intention and preparation of one out of possession to occupy the land when and if the right of possession and occupancy become a reality." *Id.* As his homestead right did not arise until after the death of his parents, the court found that the bank's preexisting lien was valid and enforceable against the debtor's ownership interest in the property. *Id.* at 710–11.

Thus, in accordance with the general rule that one's homestead rights will not protect property in which no possessory interest is held, a non-possessory, future interest in property is not protected by the homestead right of the person with the present right to occupy the property. *See also Cheswick v. Freeman,* 155 Tex. 372, 375, 287 S.W.2d 171, 172 (1956) (holding that a son's non-possessory interest in his mother's homestead was subject to creditor's lien because property cannot be impressed with two

---

**2.** However, if a remainderman has a present right to possession in property sufficient to impress it with his homestead interest, and the property is not subject to the preexisting homestead interest of another, the property will be impressed with the homestead character when he receives it in fee simple, and its protection will date back to the time he began occupying it as his homestead. *W.R. Thompson & Sons Lumber Co. v. Clifton,* 124 S.W.2d 106, 107 (Tex. Comm'n App.1939, opinion adopted).

homestead rights at the same time); 40 C.J.S. *Homesteads* § 211 (1944). In the instant case, the deed of trust executed by Richard did not create a lien against the homestead itself but instead created a lien against his non-possessory interest in the property which was not impressed with any homestead interest.

▇ As the mortgage attached only to Richard's interest and did not affect any property interest protected by Melissa's homestead right, the mortgage was not invalidated by that protection. Therefore, Richard executed a valid lien against his interest. When the youngest child reached eighteen years of age, Melissa's court-awarded homestead estate in the entire residence ended, entitling Richard, or his successor in interest, to fee simple ownership of the undivided 26.17 percent interest. Thus, Richard's interest in the property is now owned in fee simple by First Huntsville Properties and held in cotenancy with Melissa's remaining 73.83 percent interest. *See Sparks v. Robertson*, 203 S.W.2d 622, 624 (Tex.Civ.App.—Austin 1947, writ ref'd).

### C

▇ The last question to be resolved is whether Melissa's remaining homestead rights in the property prevent the forced sale and partition of the residence. On divorce, a trial court has broad power to order the "just and right" division of the divorcing couple's estate, including the ability to award the use of the homestead to one spouse, even if title to the homestead property is held by the other spouse. *Hedtke v. Hedtke*, 112 Tex. 404, 410–11, 248 S.W. 21, 23 (1923); *see* Tex.Fam.Code § 3.63. The power to order a "just and

right" division also includes the power to order the sale of the homestead and the partition of the proceeds. *Kirkwood v. Domnau*, 80 Tex. 645, 16 S.W. 428 (1891); *Hedtke*, 112 Tex. at 408, 411, 248 S.W. at 22–23 (1923); *McIntyre v. McIntyre*, 722 S.W.2d 533, 537 (Tex.App.—San Antonio 1986, no writ); *Brock v. Brock*, 586 S.W.2d 927, 930 (Tex.Civ.App.—El Paso 1979, no writ); *Delaney v. Delaney*, 562 S.W.2d 494, 495–96 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ dism'd); *Brunell v. Brunell*, 494 S.W.2d 621, 622–23 (Tex.Civ.App.—Dallas 1973, no writ); *see* Tex.Fam.Code § 3.63.

In the instant case, Melissa and Richard agreed, with the trial court's approval, to simply postpone the partition of the homestead until both children either obtained the age of eighteen or no longer attended school. Pursuant to the divorce decree in this case, the division of the homestead can now take place just as if the court had ordered the division at the time of divorce. Furthermore, it would be manifestly unjust to allow Richard's rights in the estate to be prejudiced simply because the division of the homestead property took place after the younger of the two children turned eighteen rather than at the time of divorce.[3]

▇ We need not reach the question of whether Melissa's current homestead interest is a family or single adult homestead. In this case, the result would be the same under either classification.[4] Melissa's homestead interest protects the portion of the property that she owns. Before both children reached eighteen, Melissa owned a fee interest in 73.83 percent of the residence and a limited present possessory interest in 26.17 percent of the residence.

---

3. It is not necessary to address the question of which right in the residence, as between Melissa's homestead interest and First Huntsville's right of partition, is paramount. The court of appeals misconstrued *Sayers v. Pyland* when it determined that the *Sayers* court stated that a cotenant's right to partition was paramount to another cotenant's homestead right because that case rested its holding on the fact that the homestead right had been voluntarily subordinated to another cotenant's rights. *Sayers v. Pyland*, 139 Tex. 57, 64–65, 161 S.W.2d 769, 773 (1942).

4. The constitution allows the same size urban homestead for a family and a single adult. *See* Tex. Const. Art. XVI, § 51. If Melissa no longer qualifies for a family homestead, her single homestead would relate back to the time of the creation of the family homestead for the family of her and her children. *Renaldo v. Bank of San Antonio*, 630 S.W.2d 638, 639 (Tex.1982) ("a family unit entitled to a homestead may consist of a divorced person and a dependent child"). The effective date of that homestead would relate back to the creation of the family homestead for the family of Melissa and Richard.

131

Melissa's ownership interest in 26.17 percent of the property terminated when both children reached the age of eighteen. Therefore, Melissa's homestead right only covers the 73.83 percent of the property that she currently owns.

After the partition sale, Melissa's homestead right carries over to her portion of the proceeds of sale. Melissa may seek continued homestead protection for the proceeds of the partition sale as she could for the proceeds of any other type of sale of her homestead interest. Melissa has not been divested of her homestead rights.

The trial court may not charge the cost of the suit to partition the property to Melissa's homestead interest. *Kirkwood*, 80 Tex. at 648, 16 S.W. at 429. However, this does not restrict the trial court's power to tax some or all costs of the partition to Melissa personally. *Id.*

### III

For the foregoing reasons, we hold that the mortgage and transfer of Richard's interest in the residence was permissible under the constitution and laws of Texas. We further hold that, under the divorce decree in this case, the residence is now subject to division just as if it had been apportioned at the time of divorce. We affirm the judgment of the court of appeals and remand this cause to the trial court for a disposition of the rights of the parties consistent with this opinion.

DOGGETT, J., joins in the court's judgment but not its opinion.

GAMMAGE, J., dissents, joined by MAUZY, J.

GAMMAGE, Justice, dissenting.

While the majority's logic and reason—though not their accuracy—might indicate their approach is rational, here we deal with law, and the law, as indicated by both Holmes [1] and Bumble [2], respectively, is and should be based on experience.

Our founders' experience with financial institutions divesting them and their neighbors of their property prompted them to include stringent constraints on a family's ability to encumber their homesteads. The majority today blow a large hole in that shelter.

The majority opinion inaccurately states the nature of the 1976 divorce decree and then misapplies Texas homestead law to reach a result contrary to the very purpose of the homestead protection—preventing creditors from defeating the homestead right. With due respect, I must dissent.

The divorce decree did *not* give the former husband, Richard K. Laster, any control over the homestead rights. His undivided "ownership" of 26.17% of the homestead property was subject to the family homestead rights expressly granted to his former wife Melissa Laster, at least until the homestead right granted to her terminated. He could not mortgage his interest, because the family homestead right granted to Melissa Laster attached to the *whole* property, *including his 26.17%*. Any attempt to mortgage the homestead—except for the three constitutionally sanctioned purposes of purchase money lien, construction lien for valuable improvements to the property contracted for in writing, or taxes on the property—is not just voidable but *void*. *Sanger Bros. v. Brooks*, 101 Tex. 115, 118, 105 S.W. 37, 38 (1907); *Inge v. Cain*, 65 Tex. 75, 79–80 (1885) ("*void*," "absolutely void," emphasis in original);

1. O. HOLMES, THE COMMON LAW 1 (1881):
 The life of the law has not been logic; it has been experience. The felt necessities of the time, the prevalent moral and political theories, institutions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow men, have a good deal more to do than the syllogism in determining the rules by which men should be governed. The law embodies the story of a nation's development through many centuries, and it cannot be dealt with as if it contained only the axioms and corollaries of a book of mathematics.

2. C. DICKENS, OLIVER TWIST, in Three Novels (Hamlyn 1977) at 356:
 [Quoting Bumble:] "If the law supposes that, ... the law is a ass—a idiot.... [A]nd the worst I wish the law is, that his eye may be opened by experience—by experience."

Tex. Const. art. XVI, § 50 ("No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for" purchase money, improvements thereon, and taxes due thereon). Richard Laster could not mortgage "his" share of the property, because the property as a whole, including his undivided interest, was impressed with the family homestead character.

Had Richard Laster purported to mortgage the homestead during the marriage, then divorced Melissa and been awarded an undivided share, there could be no doubt under this court's decisions that the mortgage was void and did not "spring back to life" after the divorce decree. *O'Brien v. Woeltz*, 94 Tex. 148, 154, 58 S.W. 943, 945 (1900) (deed of trust was void as to property that was business homestead at time instrument was executed, and subsequent divorce and abandonment did not make deed of trust become effective); *Hays v. Hays*, 66 Tex. 606, 608, 1 S.W. 895, 896 (1886) (wife's subsequent abandonment of family homestead did not make prior mortgage on property valid because it was "null and void" when made, i.e., when property still impressed with homestead character). We should not reach a contrary result in this case.

The divorce decree recites that "the use and occupancy of the *homestead* of said parties located on [legal description of the property] is *set aside and awarded to* Petitioner [Melissa L. Laster] and the children until the youngest child reaches the age of eighteen or [other conditions occur]." (Emphasis added.) The majority apparently concede that this language expressly granted the family homestead right to Melissa and the children, but nevertheless provide confusing separate discussions about Richard's homestead rights in his share of the property and Melissa's homestead rights in her share. The divorce decree clearly awards the *family* homestead rights. So long as there is a person who is a constituent element of the family entitled to claim it, the family homestead rights are "to occupy the entire homestead." *Reconstruction Finance Corp. v. Burgess*, 155 S.W.2d 977, 980 (Tex.Civ.App.—Waco 1941, writ ref'd).

This principle that the family homestead rights in a joint ownership situation extend to the whole property, when the whole property was owned by the community at the time the family homestead was created, is clearly explained in *Sparks v. Robertson*, 203 S.W.2d 622 (Tex.Civ.App.—Austin 1947, writ ref'd). In *Sparks*, the family homestead right originally arose during the marriage of Isaac and Elizabeth Sparks, who owned the property in community. Isaac died, and Elizabeth as the surviving widow "had a homestead estate in the entire property and a one-half interest therein in fee," but the other one-half interest "was inherited by Turner [Sparks], Isaac's son by a former marriage." 203 S.W.2d at 623. Turner was not a cotenant because Elizabeth's homestead rights prevented him from occupying the property, but he was a joint owner. Elizabeth subsequently married Chester Robertson. They lived on the property. Upon Elizabeth's death, Chester had the homestead right established by his marriage to Elizabeth, but not the homestead right in the whole property. As the opinion explained:

> Appellees' contention ... appears to be predicated upon the proposition that Chester had a homestead interest in the entire property after the death of Elizabeth. This is not correct. One can not have a homestead interest in property the title to which is in neither spouse nor in the community. As the survivor of the community of herself and Isaac, Elizabeth, of course, had a homestead interest in the entire property while used as such during her life. Upon her death the homestead interest of Chester extended only to Elizabeth's half interest in the property. Upon her death, Chester and Turner became cotenants of the property, and their rights are governed accordingly.

*Sparks v. Robertson*, 203 S.W.2d at 626.

The homestead rights addressed in the divorce decree are those established while Richard and Melissa were married and owned the property in community. The same principle applies. The homestead rights granted Melissa in the divorce de-

cree extended to the whole property, including Richard's undivided share. As the majority correctly point out, Richard was a joint owner but not a cotenant. The family homestead rights given Melissa and the children included Richard's homestead rights. He could not "abandon" them or mortgage the property to which they attached. *See Burkhardt v. Lieberman,* 138 Tex. 409, 413–14, 159 S.W.2d 847, 851 (1942) (conduct by one spouse may not estop other spouse to claim homestead right). His attempt to mortgage part of the property impressed with the homestead character was void.

The former husband's ability was to establish his own separate homestead after the divorce, not to destroy the family homestead. Nor should it have been to destroy the separate individual homestead of his former wife. The husband was a joint owner, not a cotenant. He was not entitled to occupy or partition the property so long as it was impressed with the homestead interest. His rights should extend only to establish his individual homestead, not to destroying that of his former spouse and children.

The only authority cited by the majority for trouncing the *family* homestead rights awarded to Melissa is inapposite. The majority assert correctly that a divorce court has power "to order the sale of the homestead and the partition of the proceeds." Opinion at 131. The majority then assert the effect of the divorce decree was that "Melissa and Richard agreed, with the trial court's approval, to simply postpone the partition of the homestead" and that "the

division of the homestead can now take place just as if the court had ordered the division at the time of divorce." Opinion at 131. The majority thus retroactively validate a mortgage and foreclosure of the mortgage on property protected by the family homestead rights at the time the purported mortgage was executed, even though established law is that a mortgage on property protected by the homestead right is void.

The issue is not whether the divorce judge could have ordered the sale of the homestead and the partition of the proceeds, with the property and the proceeds from its sale remaining exempt. The issue is whether, during the time the homestead rights were expressly granted to the former wife, the husband could mortgage his interest in the family homestead property. The cases cited and discussed by the majority simply do not support their conclusion.

The majority cite a number of lower court opinions over which this court exercised no review. Since this court has not heretofore approved the cases, there is no need to explain them. Nevertheless, those cases do not support the theory that a mortgage may be imposed on the non-possessory owner's undivided interest while the property is impressed with the family homestead character. In fact, if anything they support the conclusion that no mortgage, charge or lien for debt other than that expressly authorized by the constitution may be placed on property impressed with homestead character, or on the proceeds if the divorce court orders a sale of the family homestead.[3]

---

3. *McIntyre v. McIntyre,* 722 S.W.2d 533, 537 (Tex.App.—San Antonio 1986, no writ), states:

> Where a homestead cannot be partitioned, it is subject to sale and a division of the proceeds. *Brock v. Brock,* 586 S.W.2d 927 (Tex.Civ.App.—El Paso 1979, no writ). However, the proceeds from the sale of a homestead cannot be used to extinguish the liabilities due unsecured creditors. *Delaney v. Delaney,* 562 S.W.2d 494 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ dism'd).

The actual holding of the case was that the husband had not proved the property was homestead, and therefore could not complain about the order to pay fees out of the proceeds.

Based upon the record before us we cannot conclude that the family residence was the parties' homestead. As no complaint was raised at trial or in a motion for new trial, appellant has no basis for now complaining that the proceeds from the sale of the property are exempt.

*McIntyre,* 722 S.W.2d at 538.

In *Brock v. Brock,* 586 S.W.2d 927, 930 (Tex. Civ.App.—El Paso 1979, no writ), the court first held that all points had been waived but then addressed the points, stating:

> With regard to the first point, we initially note there is no question but that in a divorce proceeding where a homestead cannot be partitioned it is subject to sale and a division of

The majority also cite two decisions from this court. The first is *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21 (1923), in which this court held that the husband's separate real property, if used as the family homestead, could on divorce be awarded to the former wife for the duration of her natural life, without divesting the husband of his ownership. This court wrote, "Real estate impressed with the homestead character was as much subject to division as was nonexempt property." *Id.* at 409, 248 S.W. at 22. The opinion further explained:

> In disposing of the property of the parties it is competent for the court to consider the homestead character of any of the property, separate or community, and the homestead needs of either the husband or the wife or the children; and, the right of use and occupancy of homestead

property, as of any other, may be adjudged to the husband, the wife, or the children. *Kirkwood v. Domnau*, 80 Tex. 647, 16 S.W. 428, 26 Am.St.Rep. 770; Speer v. Sykes, 102 Tex. 451, 119 S.W. 86, 132 Am.St.Rep. 896.

*Id.* at 411, 248 S.W. at 23.

The issue of whether the husband, who owned 100% of the homestead property, could validly mortgage it for debt not sanctioned by the constitution while the former wife occupied it as homestead, was not expressly presented, but the fair implication from the opinion is that he could not. The family homestead character remained although he was dispossessed of the property by the divorce decree. Further, the quoted language from the opinion makes it clear that the divorce decree in the present case did expressly award the family home-

---

the proceeds. Speer, *Texas Family Law*, Sec. 5:64 (5th ed. 1975). It is equally clear that the proceeds of the homestead may not be used for the purpose of paying unsecured creditors. *Delaney v. Delaney*, 562 S.W.2d 494 (Tex.Civ. App.—Houston [14th Dist.] 1978, writ dism'd); *Klein v. Klein*, 370 S.W.2d 769 (Tex.Civ.App.—Eastland 1963, no writ).

The opinion then goes on to say that enough non-exempt property was ordered sold to pay the unsecured creditors, so there was no error in any event.

In *Delaney v. Delaney*, 562 S.W.2d 494, 495–96 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ dism'd w.o.j.), the court explained the difference between the right to order the sale and partition of proceeds and the lack of power to order the proceeds dedicated to pay unsecured debts:

> As part of the property division, the trial court ordered the Delaneys' community property homestead sold and the proceeds from the sale applied to the extinguishment of a variety of community debts, including a number of general unsecured debts. We sustain Mrs. Delaney's attack on the decree to the extent that the proceeds from the sale of the homestead are ordered to be applied to discharge the general unsecured debts of the marriage, as such order violates the exempt status afforded homesteads and the proceeds from their sale. *Franks v. Franks*, 138 S.W. 1110 (Tex.Civ.App.—Austin 1911, writ ref'd).

A divorce court may order partition of a community homestead, including partition by sale. *Trigg v. Trigg*, 18 S.W. 313, 317 (Tex. Sup.1891). It may not, however, order the proceeds of such a sale applied toward general debts. *Klein v. Klein*, 370 S.W.2d 769 (Tex. Civ.App.—Eastland 1963, no writ). Such an order permits general creditors to look to

property previously beyond their reach, and violates the statutory protection afforded the proceeds from the sale of a homestead. Tex. Rev.Civ.Stat.Ann. art. 3834 (1966).

The final case cited in the majority opinion likewise holds that a judicial lien may not be imposed on proceeds from the sale of the homestead to pay types of debt not authorized by the constitution. *Brunell v. Brunell*, 494 S.W.2d 621, 623 (Tex.Civ.App.—Dallas 1973, no writ), states:

> It is settled law in this state that real estate which is a homestead of the parties is subject to division on divorce. *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21 (1923); 20 Tex.Jur.2d, "Divorce and Separation," § 217. There is no legal prohibition in awarding to the wife a judgment for a sum of money found by the court to represent a fair value of the wife's interest in the homestead awarded to the husband and also to grant to the wife a lien upon the husband's property to secure the payment of the amount found by the trial court to be fair and just and to be awarded to the wife for her portion of the homestead. *Ex parte Scott*, 133 Tex. 1, 123 S.W.2d 306, 126 S.W.2d 626 (1939); *Mozisek v. Mozisek*, 365 S.W.2d 669 (Tex.Civ.App., Fort Worth 1963), and Mea v. Mea, 464 S.W.2d 201 (Tex.Civ.App., Tyler 1971). * * * However, we hold that the trial court exceeded its authority in extending the lien to the payment of attorneys' fees and past due alimony payments. This court in *Jeter v. Jeter*, 281 S.W. 598 (Tex.Civ.App., Dallas 1926), expressly held that an attempt to subject to payment of court costs and attorneys' fees the interest of the divorced spouse in his homestead was altogether unauthorized. As the court there stated the homestead character of the property was not destroyed by the decree of divorce.

stead right to the former wife. *Hedtke* does not support the majority's conclusion.

The other case the majority cites, *Kirkwood v. Domnau*, 80 Tex. 647, 16 S.W. 428 (1891), did at least deal with a former husband's right to convey his undivided interest in homestead property. Even if we equate the right to convey with the power to mortgage, because the case *lacked* the element of a specific award of the homestead right to the wife in the divorce decree, by its very own language it also does not apply.

*Kirkwood v. Domnau* was decided when the only constitutional homestead right was that of a family homestead. This court wrote that the divorce court had the right to grant the family homestead rights to the wife had it desired to do so, but that *"it not having been then done,"* the legal effect is as though the former husband and wife were tenants in common and "as if they had never borne that [marital] relation to each other." *Kirkwood v. Domnau*, 80 Tex. at 647, 16 S.W. at 429 (emphasis added). We held that the former husband could convey his undivided portion of the property, and that the former wife could not prevent a forced sale through partition by sale of her new tenant in common, to whom the former husband sold his interest.

We have just the opposite facts here. The family homestead rights were expressly granted to Melissa. The family homestead rights attached to the whole family homestead property. Richard could not convey or mortgage the property in violation of the family homestead rights awarded Melissa. Giving *Kirkwood v. Domnau* as justification for the retroactive effect of validating a void lien is just what the opinion states it does *not* authorize.

I am further concerned by what the majority opinion does by implication. Since the voters adopted the constitutional amendment November 6, 1973, single adults, including divorced persons, have had constitutional homestead rights. Tex. Const. art. XVI, § 50 ("The homestead of a family, *or of a single adult person,* shall be, and is hereby, protected from forced sale ...," emphasis added). For the strong policy reasons protecting the homestead, when two persons divorce, the *individual* homestead rights of the one continuing to occupy the family homestead should relate back to the original establishment of the homestead as *family* homestead, and "should be presumed to continue upon divorce." Note, *Effects of Extending the Homestead Exemption to Single Adults,* 26 Baylor L.Rev. 658, 664–65 (1974). Unless the circumstances of the divorce require an immediate sale, the individual homestead right, by relating back to establishment of the family homestead, should protect and attach to *all* of the property affected with the family homestead character. The trial court here evidently reached just such a conclusion by stating the former wife's homestead rights were "paramount" to whatever rights the finance company acquired as the former husband's ownership rights. That construction, supported by sound policy, would avoid the anomaly we have in this case of a creditor's dispossessing the former spouse of the homestead under the guise of a "partition." What the majority really do is condone foreclosure on and dispossession of what should be protected homestead property.

We have no business disturbing settled Texas law to aid the creditor and its successors in this case where the creditor had ample public record notice the property was family homestead. Nor should we trounce on the relatively new *individual* homestead rights of divorced persons without even acknowledging the harm we do. I would reverse the judgment of the court of appeals and affirm the trial court's judgment.

MAUZY, J., joins in this dissent.