**Affirmed as Modified and Memorandum Opinion filed July 2, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00492-CV

---

## IN THE ESTATE OF STEPHANIE JEANNE MILLER, DECEASED

---

**On Appeal from the County Court at Law No. 3**
**Fort Bend County, Texas**
**Trial Court Cause No. 21-CPR-036462**

---

## MEMORANDUM OPINION

Appellant Louis Mark Fischer appeals from the trial court's order disbursing funds from the sales proceeds of the decedent Stephanie Miller's home. In four issues Fischer asserts the trial court erred in ordering the homestead rights dissolved and disbursing half of the sales proceeds to Robert Miller, Stephanie's ex-husband. Concluding the trial court erred in finding that the Millers' divorce dissolved the homestead, we modify the trial court's order to delete reference to dissolution of the homestead. Further concluding the trial court did not err in disbursing half of the sales proceeds to Robert, we affirm the order as modified.

## BACKGROUND

Appellant Mark Fischer and decedent Stephanie Miller purchased a home in 2006. Fischer and Stephanie[1] were divorced in 2009, and the home was awarded to Stephanie as her separate property. In April 2010, Stephanie married Robert Miller and they lived in the home. In 2016 Stephanie and Robert refinanced the home. On August 23, 2016, Stephanie and Robert filed a Voluntary Designation of Homestead in which they declared the home as their homestead. In 2020, Stephanie and Robert divorced.

Stephanie and Robert entered into an agreed divorce decree in which they agreed that the home would be sold "at a mutually agreeable price." Stephanie was given the opportunity to purchase Robert's half of the home, but if she elected not to purchase Robert's half, the home would be sold and the proceeds divided with fifty percent going to Robert, and fifty percent to Stephanie. Robert was ordered to continue making payments of principal, interest, taxes, insurance, and utilities for the home until August 31, 2021, and Stephanie was allowed the exclusive right to enjoy the use and possession of the premises until the home was sold. The divorce decree also awarded reimbursement to Robert for all payments of principal, interest, taxes, insurance, and utilities from the date of the decree until the home was sold. Robert paid the mortgage and home insurance until one month before the home was sold.

Stephanie died April 2, 2021 without a will and before the home was sold. Stephanie was survived by three children.

In August, 2021, Fischer, Stephanie's ex-husband and the father of her

---

[1] Two of the parties in this case are Stephanie and Robert Miller. For ease of reference, we use their first names.

children, filed an application for determination of heirship, appointment of administrator, and issuance of letters of administration. The following January, Fischer filed an application to set aside exempt property in which he alleged the home was Stephanie's homestead at the time of her death and was, therefore, exempt from execution and forced sale.

On March 31, 2022, Robert filed an "Authenticated Secured Claim" in which he requested one-half of the proceeds of the sale of the home and reimbursement for the expenses he incurred in maintaining the home pursuant to the agreed divorce decree. Robert attached receipts documenting payments he made on the mortgage, insurance, and property taxes. The next day, April 1, 2022, Robert responded to Fischer's application to set aside the home as exempt property and asserted that, according to the agreed divorce decree, he was entitled to reimbursement for expenses paid on the property and one-half of the sales proceeds. On April 29, 2022, Fischer, in his capacity as the Dependent Administrator of Stephanie's estate, rejected Miller's claim of a secured lien on the home, but allowed his claim as an unsecured debt of a general creditor not entitled to enforce the claim against exempt property.

On July 25, 2022, the home was sold and the proceeds were deposited into the registry of the court.

After a hearing on Fischer's application to set aside exempt property, the trial court issued an order for disbursement and distribution of funds in the court registry from the proceeds of the sale of "nonexempt property." The trial court found:

- Fischer's claim of exempt homestead had been previously denied on April 4, 2023, and the sale of real property approved;
- Robert's secured claim was barred;
- In accordance with the Millers' agreed divorce decree, Robert

was entitled to fifty percent of the proceeds of the sale of the home;

- The home was not found to be an exempt homestead in the agreed divorce decree; and

- After Stephanie's death, the home was sold pursuant to the agreed divorce decree.

The trial court subsequently signed findings of fact and conclusions of law in which the court detailed the above findings and further concluded:

- Miller's secured claim was barred pursuant to section 355.064 of the Estates Code because he failed to timely appeal Fischer's rejection of his secured claim;

- Fischer, as dependent administrator, was not entitled to claim the home as exempt property; and

- The homestead had been abandoned by the declared heirs.[2]

Fischer timely filed notice of appeal challenging the trial court's order.

## ANALYSIS

In four issues Fischer challenges the trial court's order asserting (1) Stephanie and Robert's divorce did not dissolve the marital rights of homestead; (2) the evidence established that the home was Stephanie's exempt homestead at the date of her death; (3) Robert's failure to file a suit on his rejected claim of a lien barred him from any right to be paid from the proceeds of the sale; and (4) Stephanie and Robert's divorce did not give Robert an owelty lien or other enforceable right to be paid from Stephanie's separate property.

---

[2] Both parties agree that whether the children abandoned the homestead does not affect the homestead nature of Stephanie's portion of the sales proceeds. Moreover, the homestead character of the heirs' distribution is not dependent on their continuing to reside on the premises. *Greene v. Cass Cnty. State Bank*, 7 S.W.2d 620, 623 (Tex. Civ. App.—Texarkana 1928, no writ).

4

# I.  Application of Legal Standards to the Parties' Interests

At the heart of this dispute is Fischer's assertion that the home was Stephanie's homestead, and her heirs are entitled to all of the sales proceeds despite the divorce decree order of partition. Robert, in turn, asserts the divorce court partitioned the home when it ordered its sale and disbursement of the proceeds split between Stephanie and Robert.

Homestead rights historically have enjoyed strong protection in Texas. *See Grant v. Clouser*, 287 S.W.3d 914, 919 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The "fundamental idea connected with a homestead is unquestionably associated with that of a place of residence for the family, where the independence and security of a home may be enjoyed, without danger of its loss, or harassment and disturbance . . . a secure asylum of which the family cannot be deprived by creditors." *Cocke v. Conquest*, 35 S.W.2d 673, 678 (Tex. 1931). The homestead interest is a legal interest created by the Texas Constitution. *See Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992). The Texas Constitution provides special protections for the homestead separate and distinct from protections afforded other types of property. *See* Tex. Const. art. XVI, § 50.

Partition rights also are well established. The Property Code provides that "[a] joint owner or claimant of real property or an interest in real property . . . may compel a partition of the interest or the property among the joint owners or claimants under this chapter and the Texas Rules of Civil Procedure." Tex. Prop. Code § 23.001. The right to partition has been characterized as "absolute." *Carter v. Charles*, 853 S.W.2d 667, 671 (Tex. App.—Houston [14th Dist.] 1993, no writ). If the property cannot be partitioned in kind, there must be a partition by sale. Tex. R. Civ. P. 770; *Carter*, 853 S.W.2d at 671–72.

A homestead right must accommodate the right to partition in some

5

circumstances. Upon divorce, the trial court has broad power to order a "just and right" division of a divorcing couple's estate, including the power to order the sale of the homestead and partition of the proceeds. *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 131 (Tex. 1991). Under these circumstances, the homestead right attaches to the proceeds of the partition sale; a spouse generally enjoys continued homestead protection for the proceeds of the partition sale against creditors. *See id.* at 132; *Grant*, 287 S.W.3d at 920.

Here, Stephanie and Robert entered into an agreed divorce decree in which they agreed to sell the home and divide the proceeds if Stephanie decided not to purchase Robert's half of the home. The divorce court signed the decree ordering the sale of the homestead and partition of the proceeds. The trial court in the instant case found that pursuant to the divorce decree Robert was entitled to fifty percent of the proceeds of the sale of the home. Applying the above legal standards to the instant case, Robert is entitled to half of the home's sales proceeds and Stephanie's heirs are entitled to half of the proceeds. The heirs' half of the proceeds enjoys continued homestead protection against creditors. *See Grant*, 287 S.W.3d at 920.

## II.  "Dissolution" of the Homestead

In Fischer's first issue he claims the trial court erred in relying on *Bahn v. Starcke*, 34 S.W. 103 (Tex. 1896) in finding that the divorce decree "dissolved the marital rights of homestead." Robert agrees and asserts that he never sought dissolution of Stephanie's rights to the homestead, but sought to recover half of the sales proceeds as a result of the divorce court's partition. In the pertinent portion of the trial court's order, the court found:

> IT IS ORDERED that the property located at 26315 Sundown Cove Lane was not found to be "exempt homestead" as the Agreed Divorce Decree . . . dissolved the marital rights of homestead. Stephanie Jeannie Miller, the Decedent, passed away on April 2, 2021, prior to completing

6

the sale of the property pursuant to the terms and conditions set out in the Agreed Divorce Decree. After the Decedent passed away, the home was abandoned and as the sole asset of the Estate of Stephanie Jeanne Miller was sold pursuant to said Agreed Divorce Decree.

In the trial court's conclusions of law, the court concluded:

On the issue of homestead, this Court relied on *Bahn v. Starcke*, 89 Tex. 203, 34 S.W. 103, 59 Am. St. Rep. 40 on the deconstruction of the "family" homestead rights. The "homestead" had been abandoned by the declared heirs: Jakoby Evan Fischer, [L. M. F.], and [R. R. F.]. The divorce destroyed the particular family existence which was the foundation which gave the family the homestead right.

In *Bahn*, decided in 1896, the Texas Supreme Court held that when a man and wife, having no children, were divorced, the divorce destroyed the family, the existence of which gave the homestead right, and that the property was, therefore, not a homestead, and was subject to execution. *Id*. at 105–06. As pointed out by both parties in this case, *Bahn* was decided before a 1973 amendment to the Texas Constitution, which added the words "or of a single adult person" to article XVI of the Texas Constitution, allowing unmarried persons to have a homestead exemption. *See* Tex. Const. art. XVI § 50.

The trial court, therefore, erred in finding the entire homestead had been dissolved by Stephanie and Robert's divorce decree. As stated above, the divorce court partitioned the proceeds of the sale of the home, but the homestead right attached to Stephanie's and her heirs' portion of the proceeds after the sale. *See Grant*, 287 S.W.3d at 920. We therefore sustain that portion of Fischer's first issue challenging the trial court's finding that the entire homestead was dissolved by the divorce decree.

III. **Evidence supporting distribution of sales proceeds**

In Fischer's second issue he asserts the evidence established the home was

Stephanie's exempt homestead at the time of her death. Specifically, Fischer argues the entire home was Stephanie's homestead, and Robert is not entitled to one-half of the sales proceeds because that would be an impermissible collection of a debt against the homestead.

Fischer's argument fails to account for the divorce court's right to partition the home, and failing a partition-in-kind, to order the home sold and partition the proceeds. This is exactly what the divorce court did pursuant to Stephanie and Robert's agreement. The trial court, therefore, did not err in ordering fifty percent of the proceeds distributed to Robert. *See Laster*, 826 S.W.2d at 131; (permitting trial court to partition sales proceeds of a homestead in a divorce decree); *Grant*, 287 S.W.3d at 920.

Fischer also asserts Stephanie did not "contract away" her homestead rights by agreeing to partition in the divorce decree. Because the divorce court had authority to partition the proceeds as part of a just and right division, we need not address whether Stephanie "contracted away" her homestead by agreeing to the partition in the decree. We overrule Fischer's second issue.

## IV.  Rejection of secured claim

In Fischer's third issue he asserts that Robert's failure to file a lawsuit on his rejected claim of a lien barred him from any right to be paid from the home's sales proceeds under section 355.064 of the Estates Code. Section 355.064(a) provides, "A claim or part of a claim that has been rejected by the personal representative is barred unless not later than the 90th day after the date of rejection the claimant commences suit on the claim in the court of original probate jurisdiction in which the estate is pending." Tex. Estates Code § 355.064(a). There is no dispute that Robert did not commence suit within 90 days of Fischer's rejection.

Fischer rejected Miller's claim as follows:

I hereby REJECT the entire claim in the amount of "42,487.61 plus ½ the remaining proceeds of the sale of [the home]" **to the extent the claim asserts to be a secured claim or have a lien** on [the home] or right or priority to be paid from sales proceeds of [the home] which is a homestead and exempt property. For clarification I REJECT that (i) the claim is a secured claim; (ii) Claimant has a lien on [the home] (iii) Claimant has right that has priority over the exempt status of [the home] as Decedent's homestead; (iv) Claimant has a valid right to enforce payment from the net sales proceeds of exempt property; and (v) Claimant has any right other than as a general creditor not entitled to enforce a claim against Decedent's exempt property.

As an unsecured claim of a general creditor not entitled to exempt property, I hereby REJECT $12,430.67 of the claim and ALLOW $30,056.94 plus an amount that is ½ the net sales proceeds of [the home] after deduction of the sum of $30,056.94 plus $20,000.00 per the language of the divorce decree on which Claimant bases his claim. This allowance is only as an **unsecured debt of a general creditor not entitled to enforce the claim against exempt property.** (emphasis in original)

The trial court found that Robert's "secured claim . . . was rejected" and determined that no order or action was necessary to classify Robert's secured claim because it had been rejected.

In asserting that his rejection of the secured claim also rejected Robert's claim for half of the sales proceeds, Fischer relies on his previous argument that the entire home was Stephanie's homestead. Having rejected that argument earlier, we reject Fischer's claim that section 355.064 of the Estates Code prohibits payment of half of the sales proceeds to Robert. In fact, in rejecting Robert's secured claim, Fischer specifically allowed his claim of one half of the sales proceeds of the home "[a]s an unsecured creditor." The record supports the trial court's finding that Robert was entitled to half of the sales proceeds, but was not entitled to a secured claim or lien on the property. We overrule Fischer's third issue.

In Fischer's fourth issue he asserts Stephanie and Robert's divorce decree did not grant an owelty lien or other enforceable right to be paid from Stephanie's separate property homestead.

We find no authority for an "owelty lien" in Stephanie and Robert's divorce decree. An "owelty" is defined as: "Equality as achieved by a compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property." *Owelty*, BLACK'S LAW DICTIONARY 1214 (11th ed. 2019). As the Texas Supreme Court explained, owelty is the difference in value that results when a court divides property into shares of unequal value in partition proceedings. *Sayers v. Pyland*, 161 S.W.2d 769, 772 (Tex. 1942). That is, "[i]n case there be a partition in kind, owelty may be adjudged to achieve a fair and equitable partition." *Travelers Ins. Co. v. Nauert*, 200 S.W.2d 661, 665 (Tex. Civ. App.—El Paso 1941, no writ). Owelty may be awarded as a necessary incident to partition in kind as a means of correcting an inequality; however, it is not a substitute for or subtype of partition. Application of the doctrine of owelty is limited to those cases in which partition-in-kind is adjudged. *Rodriguez v. Rivas*, 573 S.W.3d 447, 453 (Tex. App.—Amarillo 2019, no pet.). Here, partition-in-kind was not possible and the divorce court ordered the home sold and the proceeds partitioned.

We further find no reference to an "owelty lien" in the trial court's order. The absence of an owelty lien, however, does not prohibit Robert's right to recover one-half of the home's sales proceeds. As discussed above, while Stephanie's half of the proceeds maintains its homestead character, Robert is entitled to payment of half of the sales proceeds under the divorce decree. We overrule Fischer's fourth issue.

## V. Robert's request for attorney's fees under the Estates Code

In Robert's brief on appeal, he asks this court to affirm the trial court's order and award him attorney's fees under section 355 of the Estates Code. In the trial

court Robert requested attorney's fees pursuant to section 355 of the Estates Code, although he did not specify which portion of Chapter 355 afforded him his attorney's fees. The trial court did not award attorney's fees to either party.

Robert waived the issue of his attorney's fees by failing to file a notice of appeal from the trial court's order. Tex. R. App. P. 25.1. Under Rule 25.1 of the Texas Rules of Appellate Procedure, any "party who seeks to alter the trial court's judgment . . . must file a notice of appeal." Tex. R. App. P. 25.1(c). Unless a party seeking to alter a trial court's judgment files a notice of appeal of his own, the appellate court is not permitted to grant more favorable relief than the trial court except for just cause. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 171 (Tex. 2004). Pursuant to Rule 25.1, a party that seeks to amend the trial court's judgment to include an award of attorney's fees must file a notice of appeal. *C3 Communications, LLC v. Gigabit Techs., LLC*, No. 14-19-00730-CV, 2021 WL 2965456, at *4 (Tex. App.—Houston [14th Dist.] July 15, 2021, pet. denied) (mem. op.).

Because Robert did not file a notice of appeal, he waived his right to present a complaint for appellate review that the trial court failed to award attorney's fees. *Id.*; Tex. R. App. P. 25.1.

## CONCLUSION

The trial court erred in finding the homestead had been dissolved by the divorce decree. We modify the trial court's order to delete any reference to dissolution of the homestead. We affirm the trial court's order as modified.

/s/ Jerry Zimmerer
Jerry Zimmerer
Justice

Panel consists of Justices Jewell, Zimmerer, and Hassan.

11