COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MARIA LUISA RAMOS, | § | No. 08-23-00289-CV |
| Appellant/Cross-Appellee, | § | Appeal from the |
| v. | § | 38th Judicial District Court |
| ANNA M. MARROQUIN and JOSE L. MARROQUIN, | § | of Uvalde County, Texas |
| Appellees/Cross Appellants. | § | (TC# 2019-10-33032-CV) |

## <u>SUBSTITUTED MEMORANDUM OPINION</u>

Before us is Appellees' motion for rehearing. We deny their motion but withdraw our opinion of January 16, 2025 and substitute this opinion in its place.

At the time of his death, Louis Almaraz held title to a piece of real property in Uvalde County.[1] After Louis's death, Appellant Maria Luisa Ramos and Appellees Anna and Jose Marroquin claimed title to that property, leading to this litigation.[2] The heart of the dispute is whether Louis, without his wife's joinder, validly conveyed a community property homestead to

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent they might conflict with our own. *See* Tex. R. App. P. 41.3.

[2] Anna was Louis's daughter from his first marriage and Jose is Anna's husband. Although Maria was not Louis's biological daughter, she was raised by him as a daughter and referred to him in her testimony as "dad."

Anna and Jose. The trial court ruled that his deed conveyed only his one-half interest. For the reasons stated below, we hold that the entire deed was invalid, and we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Anna acquired 5.141 acres in Uvalde County. The parties dispute who actually paid for the property. According to Anna, she, her husband Jose, and her father Louis, all paid for the property. Anna testified that the plan was that Louis would live there during his life, and Anna and Jose would live there after they retired. Maria, on the other hand, testified that although the 1998 deed granted the property to Anna, Louis paid the entire purchase price for the property.

After the property was purchased, Louis built a home and he and his wife Jeanette lived there. In 2001, Jeanette moved out. Maria contends that Jeanette only left to be closer to specialized medical care that she needed. Anna testified that the separation was permanent. Anna stated that she was present when Jeanette moved out and that they loaded a U-Haul with a majority of the items from the house. After Jeanette moved out, Anna helped Louis fill out forms for a divorce. Louis later told Anna that he received the forms back from the court and that he was divorced. He was not and he remained legally married to Jeanette until his death. The parties agreed that Jeanette did not return to the property and beginning in 2003 or 2004, Louis's girlfriend lived at the property with him.

In 2004, Anna deeded the property to Louis. She said that she did so because Louis wanted to use the property as collateral to start a gas station/liquor store business. She believed that he was divorced, and the deed grants the property to Louis as "a single man." Then, on August 20, 2016, Louis deeded the property to Anna and Jose.[3] Despite this deed, Louis changed his will two months later to leave the property to Maria.

---

[3] The deed is dated January 1, 2014, but not signed until August 20, 2016.

2

In January 2018, Louis died. The next month, Jeanette signed a deed granting all of Jeanette's interest in the property to Maria. Jeanette passed away before this case went to trial.

Maria filed suit against Anna and Jose for trespass to try title and, in the alternative, partition.[4] As she does on appeal, she argued that the 2016 deed to Anna and Jose was void and that she owns the property because of Louis's will and Jeannette's deed. Anna and Jose counterclaimed, asserting that their deed was valid because at the time he signed the deed, the property was in Louis's name only. Anna and Jose requested a declaratory judgment that they were the owners of the property and quieting title in them.

Trial was to the bench. In addition to Maria, Anna, and Jose, three other witnesses testified. The focus of their testimony was on Louis's intentions and whether Jeanette abandoned the homestead. Adela Almaraz, Louis's sister-in-law, testified that she did not know if Louis and Jeanette ever got divorced, but that Jeanette moved from the property and was living with her daughter. Olivia Allen, Louis's friend, testified that she witnessed him sign his will, but she never discussed the contents of the will with Louis. She also could not remember if Jeanette ever lived on the property. Janice Jones, Jeanette's daughter, testified that Jeanette left some of her belongings at the Uvalde property, but never returned after she moved out. However, she stated that Jeanette and Louis remained close after Jeanette moved and he visited her often. Janice was present when Jeanette deeded her interest in the property to Maria and testified that she did so because Jeanette did not want Anna to have the property.

The trial court found that the property was Louis and Jeanette's community property, but that Jeanette abandoned the property. Further, the court found that the 2016 deed conveyed only Louis's one-half community property interest to Anna and Jose and that Jeanette conveyed her

---

[4] Her petition includes other causes of action (conversion, theft of property, undue influence, and quiet title) which she did not pursue at trial or on appeal.

one-half community property interest to Maria. The trial court ruled that Maria owns an undivided one-half interest in the property and that Anna and Jose jointly also own an undivided one-half interest. The court ordered that the property be partitioned by sale with the proceeds split accordingly.

Maria raises six points of error on appeal.[5] Broadly, Issues One and Two challenge the trial court's finding that Jeanette abandoned the home, arguing that the issue was not pleaded and that there was insufficient evidence to support the finding. In Issues Three through Six, Maria argues that the conveyance to Anna and Jose violated the Texas Constitution and Texas Family Code.[6] Specifically, she contends that the conveyance was (1) invalid because Jeanette never consented to the conveyance of the community property homestead; (2) it was a prohibited partition of the property; (3) it was a "pretended sale"; and (4) Louis did not follow the correct procedure for conveying a homestead after abandonment.

Anna and Jose cross-appealed, arguing that the trial court erred in finding that Maria has an ownership interest in the property because, under § 3.104 of the Texas Family Code, the property was presumed to be the sole management property of Louis, and they were entitled to rely on his authority to convey the property to them.

---

[5] Maria's "Issues Presented" section in her amended brief contains ten issues. However, in the body of the brief, some of the ten issues only appear as sub-arguments to other issues, of which she presents six. In our discussion, we number the issues as they are numbered in the brief's headings.

[6] Maria's "Issues Presented" does raise two additional issues: whether the evidence supported the trial court's findings that Maria "presented no evidence of any pecuniary loss to support damages" and "raised no evidence that [Anna and Jose] exercised dominion and control over any estate property." Her brief, however, does not discuss these issues and those issues are waived. Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

## II. ANALYSIS

### A. Homestead rights

The trial court found that the property was community property because it was acquired while Louis was married to Jeanette. Tex. Fam. Code Ann. §§ 3.002, .003. (property acquired during the marriage is presumed to be community property, belonging to both spouses). Anna and Jose do not challenge that finding.

Texas law contains robust protections for homestead rights. In the context of marital property, "[w]hether the homestead is the separate property of either spouse or community property, neither spouse may sell, convey, or encumber the homestead without the joinder of the other spouse . . . ." *Id*. § 5.001; Tex. Const. art. XVI, § 50(b) ("An owner . . . may not sell or abandon the homestead without the consent of each owner and the spouse of each owner . . . .").

It is undisputed that Jeanette did not join in the conveyance of the property. The validity of the conveyance turns on whether Louis was allowed to sell the property once Jeanette moved out.

### B. Abandonment of homestead

The trial court found that Jeannette abandoned the homestead which allowed Louis to convey his one-half interest in the property. Maria argues that the issue was not properly before the trial court because abandonment is an affirmative defense that was not pleaded. She further argues that the evidence was insufficient to support the finding of abandonment because neither spouse was alive to testify about their intent which is an essential element of abandonment. *Estate of Montague v. Nat'l Loan Inv'rs, L.P.*, 70 S.W.3d 242, 248 (Tex. App.—San Antonio 2001, pet. denied) ("Abandonment of a homestead requires both the cessation or discontinuance of use of the property as a homestead, coupled with the intent to permanently abandon the homestead."). We find it unnecessary to reach these issues because, as we explain below, even if Jeanette abandoned the property, Louis was not allowed to convey the homestead without her joinder or a court order.

The Legislature specifically contemplated Louis's situation—a separated spouse who wants to convey homestead property. Rather than simply allowing one spouse to unilaterally convey the property because the other spouse abandoned it, the Legislature crafted a procedure designed to protect the rights of the absent spouse. Tex. Fam. Code Ann. §§ 5.101, .102. The spouse wanting to sell the homestead, whether it is separate or community property, must file a sworn petition alleging "the facts that make it desirable for the [petitioning] spouse to sell, convey or encumber the homestead without the joinder of the other spouse[.]" *Id.* §§ 5.101, .102. The petition must also allege one of the following reasons why the other spouse cannot or will not consent: that spouse "(1) has disappeared . . . ; (2) has permanently abandoned the homestead and the petitioning spouse; (3) has permanently abandoned the homestead and the spouses are permanently separated; or (4) has been reported . . . to be a prisoner of war or missing on public service[.]" *Id.* The court may appoint an attorney to represent the absent spouse and must do so if that spouse is a prisoner of war or missing on public service. *Id.* § 5.104(a), (b). The absent spouse must be served, either in person, through his or her attorney, or by publication if his or her location is unknown. *Id.* §§ 3.304, 3.305, 5.105. And the court, after a hearing, "shall enter an order the court deems just and equitable[,]" which may include terms to protect the absent spouse such as a bond or payment to the registry of a portion of the proceeds of the sale." *Id.* § 5.106.

Assuming without deciding that the trial court's finding that Jeanette abandoned the homestead was correct, abandonment did not allow Louis to convey the property. If Jeanette would not join in the conveyance, Louis was required to request and obtain a court order giving him the authority to convey the property. He did not do so here. Because the conveyance violated the Texas Constitution and Family Code regardless of abandonment, we sustain Maria's Issues One, Two, and Six.

6

## C. Effect of the conveyance

Anna and Jose argue that the conveyance of a homestead without the joinder of both spouses does not render the conveyance void, but "merely inoperative" until the other spouse abandons the property. They reason that "even if Jeanette once held homestead rights to the Property, the [] Deed from Louis to [Anna and Jose] was not void as a result of Jeanette's non-joinder. Instead, it was inoperative until she abandoned her rights." This argument renders § 5.102 useless. It would be unnecessary for a spouse to file a sworn petition alleging abandonment, obtain service, and participate in a hearing if any of those acts by themselves would allow the conveyance of community property.

Most of the cases cited by Anna and Jose for the proposition that the conveyance was only inoperative were decided before the enactment of the Matrimonial Property Act of 1967, when women had few property rights aside from homestead protections. *See Few v. Charter Oak Fire Ins. Co.*, 463 S.W.2d 424, 426 (Tex. 1971) (discussing the history of marital property laws in Texas). The Matrimonial Property Act made sweeping changes to marital property law making suspect many principles of law announced in earlier cases.[7] Act of May 16, 1967, 60th Leg., R.S., ch. 309, 1967 Tex. Gen. Laws 735, 735–41. Important to this case, before the Act, the law did not require the husband to get a court order to sell a homestead if the wife abandoned the home. The cases Anna and Jose cite simply affirm that, before the Matrimonial Property Act of 1967, a husband had the sole right to manage all property and, once property lost its homestead character for any reason, the husband had the authority to sell it without the wife's joinder. *See Wright v. Hays*, 34 Tex. 253, 261 (1871) (holding that because the wife had died by the time of trial, her

---

[7] For example, before the Act took effect, women had no right to manage any property, even their own separate property. *Milburn v. Walker*, 11 Tex. 329, 329–30 (1854). And while wives had homestead rights, the husband had the right to choose the homestead and the wife was "bound by her marital obligations to live with him, and when he changes his place of residence, she must accompany him." *Slavin v. Wheeler*, 61 Tex. 654, 659–60 (1884) (quoting *Guiod v. Guiod*, 14 Cal. 506, 507 (1860)).

failure to join in the conveyance did not prevent specific performance of the contract for sale); *Marler v. Handy*, 31 S.W. 636, 639 (Tex. 1895) (holding that when a family moves to a new homestead, the husband may sell the former homestead without his wife's consent); *Robertson v. Hefley*, 118 S.W. 1159, 1165 (Tex. App.—Austin 1909, no writ) (noting that property would not have been a homestead because the couple had moved and occupied a different property as their homestead); *Bishop v. Williams*, 223 S.W. 512, 515–16, 519 (Tex. App.—Austin 1920, writ ref'd) (same).[8]

In their motion for rehearing, Anna and Jose say that this principle–that conveyances of homestead property are merely inoperable while the property is a homestead–remained true even after the enactment of the Matrimonial Act of 1967 and cite cases decided since then. But in some of these cases, the property at issue was separate property. *Geldard v. Watson*, 214 S.W.3d 202, 205 (Tex. App.—Texarkana 2007, no pet.) (noting that the parties conceded that the property was the separate property of the wife); *Villareal v. Laredo Nat. Bank*, 677 S.W.2d 600, 606 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) (explaining that property had been awarded to husband in the divorce, and wife only had a homestead interest until the children reached the age of majority); *Wilcox v. Marriott*, 103 S.W3d 469, 471 (Tex. App.—San Antonio 2003, pet. denied) (stating that wife had signed an affidavit stating that the property was her husband's separate property); *York v. Boatman*, 487 S.W.3d 635, 639 (Tex. App.—Texarkana 2016, no pet.) (property at issue was inherited by wife and therefore, was her separate property); *Cummings v. Gillespie*, 2002 WL 452285 (Tex. App.—Tyler Mar, 20, 2002) (reciting that the homestead was wife's separate property). And in others, the court did not say whether the homestead was separate or community. *Zable v. Henry*, 649 S.W.2d 136, 138 (Tex. App.—

---

[8] In *Grissom v. Anderson*, also cited by Anna and Jose, the Court held that a husbands' lease of mineral interests in the homestead property was operable, not because the wives abandoned the property, but because they ratified the leases by signing later royalty deeds. 79 S.W.2d 619, 622–23 (Tex. 1935).

8

Dallas 1983, no writ); *Williams v. Saxon*, 521 S.W.2d 88 (Tex. App.—San Antonio 1975, writ ref'd n.r.e).

The distinction between community and separate property in these cases is an important one. If the property is the separate property of one spouse, the homestead right of the other spouse "is analogous to a life tenancy, with the holder of the homestead right possessing the rights similar to those of a life tenant for so long as the property retains its homestead character." *Laster v. First Huntsville Properties Co.*, 826 S.W.2d 125, 129 (Tex. 1991). Therefore, once a spouse is no longer residing in the other spouse's separate property, he is not harmed when the property is conveyed because he is no longer exercising the one right he had to the property, his homestead right. But if the property is *community* property, a spouse continues to have an ownership interest even after he moves from the property. *Farmers Tex. Cnty. Mut. Ins. Co. v. Okelberry*, 525 S.W.3d 786, 794 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("The community property scheme thus makes the spouses equal owners of undivided interests in all of the community property."). If a unilateral conveyance of a community property homestead became operable once a spouse left the property, as Anna and Jose argue, that spouse would lose not just the homestead right to reside in the property, but their ownership interest. The cases cited by Anna and Jose do not address this effect of selling a community property homestead.

There are other distinguishing facts in the cases cited by Anna and Jose. In *Zable v. Henry*, a seller sought a declaratory judgment that the defendant's option to purchase his homestead in the future was void because it had not been signed by the seller's wife. 649 S.W.2d 136, 138 (Tex. App.—Dallas 1983, no writ). The court stated:

> There is absolutely no way of predicting whether the property will continue to be a homestead until 1988. Should the homestead status cease prior to 1988, the option, subject to its terms, will be enforceable by an action for specific performance. If the homestead status exists when the option is exercised, and Mrs. Zable refuses to ratify the deed, the Henrys have a cause of action for damages against Mr. Zable.

9

> In either case, the option is currently valid and should not be declared void merely because it is temporarily unenforceable by specific performance.

*Id*. at 138. Even if the property in the case is community property (which is never expressly stated), the court holds only that an option to purchase which *might* be enforceable in the future is "currently valid." Any implication that the contract can be enforced if the wife abandons the homestead is dicta.

In *Geldard v. Watson*, Geldard resided in his wife's separate property home. 214 S.W.3d 202, 205 (Tex. App.—Texarkana 2007, no pet.). His wife deeded the home to her daughter, Watson, from a prior marriage. *Id.* When the wife went to live in a nursing home, Watson filed a forcible detainer case to evict Geldard. *Id.* at 205–06. The deed's validity was not before the court. The court only held that because the forcible detainer action necessarily required an adjudication of the merits of title, the justice and county court lacked jurisdiction to render the orders that they did. *Id*. at 209. Because the court analyzed the homestead right to possession as it relates to its jurisdiction over an eviction case, it did not discuss the issue before us—whether the unilateral conveyance of the homestead community property is void.

We hold that the deed did not become operable because Jeanette moved from the homestead.

### D. Louis could not convey his one-half interest in the property.

The trial court concluded that the effect of Jeanette's non-joinder in the conveyance was that she retained her one-half interest and Louis could only convey his one-half interest. Maria argues that Louis could not convey even his share of the property because it resulted in an unconstitutional partition of community property. A spouse cannot convey only their one-half interest in joint management community property because to do so would "effectuate a partition by creating a tenancy-in-common between the remaining spouse and the third party" violating the Texas Constitution. *Dalton v. Don J. Jackson, Inc.*, 691 S.W.2d 765, 768 (Tex. App.—Austin

10

1985, no writ); Tex. Const. art. XVI, § 15. Anna and Jose contend that Louis could convey his own one-half interest in the homestead because it was not joint management property; it was in Louis's name and his sole management property.

One spouse has the "management, control, and disposition of the community property that the spouse would have owned if single[.]" Tex. Fam. Code Ann. § 3.102(a). This includes "(1) personal earnings; (2) revenue from separate property; (3) recoveries for personal injuries; and (4) the increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control, and disposition." *Id.* In addition, property in only one spouse's name is presumed to be that spouse's sole management property. *Id*. § 3.104(a). Community property other than what is specifically defined as sole management property "is subject to the joint management, control, and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement." *Id*. § 3.102(c). Joint management property cannot be conveyed by one spouse without the consent of the other. *Matter of Estate of Abraham*, 583 S.W.3d 890, 895–96 (Tex. App.—El Paso 2019, pet. denied); *Jean v. Tyson-Jean*, 118 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

The homestead, which was in Louis's name only, was presumed to be his sole management property. Homestead protections are not extinguished, however, simply because the property is in the name of one spouse. Regardless of the characterization of the property, "neither spouse may sell, convey, or encumber the homestead without the joinder of the other spouse" Tex. Fam. Code Ann. § 5.001. The Fourth Court of Appeals explained that because of the joinder requirement, "the homestead interest in property solely in the name of one spouse only would clearly fall within the rules governing joint management property." *Williams v. Saxon*, 521 S.W.2d 88, 90–91 (Tex. App.—San Antonio 1975, writ ref'd n.r.e.).

Anna and Jose attempt to avoid this result by arguing that the property was not a homestead because *both* Jeanette and Louis abandoned the homestead. No argument was made at trial that Louis abandoned the homestead, and the trial court did not make any such findings. Anna and Jose argue that Louis abandoned the property when he deeded it to them in 2016. Apparently conceding that homestead property cannot be conveyed without the joinder of the absent spouse, they argue that the property was no longer a homestead *because* it was conveyed to them. This logic is circular. Like their prior argument, this position would render §§ 5.101 and 5.102 meaningless because a spouse would never have to seek a court order allowing him to convey homestead property because the conveyance itself would remove the protections afforded to a homestead.

While the trial court's ruling resulted in an equitable outcome under the particular facts of this case, it does not find support in the law. Because Louis could not convey *any* of the property, including his interest, without Jeanette's joinder or a court order, we sustain Maria's Issues Three and Four.

### E. Appellees' cross-appeal

Finally, Anna and Jose cross-appealed, arguing that the trial court erred because it should have found that they were protected persons under § 3.104 and therefore own a 100% interest in the property.[9]

Section 3.104(b) states,

(b) A third person dealing with a spouse is entitled to rely, as against the other spouse or anyone claiming from that spouse, on that spouse's authority to deal with the property if:

    (1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and

    (2) the person dealing with the spouse:

        (A) is not a party to a fraud on the other spouse or another person; and

---

[9] While Maria contends that Anna and Jose waived this issue by not pleading it, the record shows that Anna and Jose filed a counterclaim in which they sought a declaratory judgment based on Louis's alleged sole authority to convey the property under § 3.104.

> > (B) does not have actual or constructive notice of the spouse's lack of authority.

Tex. Fam. Code Ann. § 3.104(b)

Because the property was in Louis's name only, and thus presumed to be under his sole management, Anna and Jose claim that they were entitled to rely on his authority to convey the property. Maria responds that § 3.104 conflicts with the homestead protections of Chapter 5 of the Family Code and that Chapter 5 controls. We agree. Section 3.104 is a general provision pertaining to the conveyance of community property. It makes no mention of homesteads. On its face, it allows a spouse to convey any property, including the homestead, if it is in his sole name. Chapter 5, which contains specific provisions about homesteads, forbids this outcome. Even a spouse's separate property homestead, which would be in that spouse's sole name and under his sole management, cannot be sold, conveyed, or encumbered without joinder or a court order. Tex. Fam. Code Ann. §§ 5.001, 5.101. When a general and specific statute conflict, the "special . . . provision prevails as an exception to the general provision . . . ." Tex. Gov't Code Ann. § 311.026(b). In addition, if § 3.104 is construed to allow one spouse to sell a homestead without the consent of the other spouse, it would violate the Texas Constitution. Tex. Const. art. XVI, § 50(b). "We must construe a statute in a manner that renders it constitutional if it is possible to do so consistent with a reasonable interpretation of its language." *Univ. of Texas Health Sci. Ctr. at San Antonio v. Mata & Bordini, Inc.*, 2 S.W.3d 312, 317–18 (Tex. App.—San Antonio 1999, pet. denied) (citing *Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 715 (Tex. 1990, orig. proceeding). Even though the property was in Louis's name, § 3.104 did not permit Anna and Jose to rely on his authority to convey the property because the property at issue was homestead property.[10]

---

[10] The cases cited by Anna and Jose are inapposite because the property at issue in those cases was not homestead property. *United States v. Tracts 31a, Lots 31 & 32, Lafitte's Landing Phase Two Port Arthur, Jefferson Cnty. Texas*, 852 F.3d 385, 391–92 (5th Cir. 2017) (holding that husband did not need the consent of wife to convey annuities that were his sole management property); *Jean v. Tyson-Jean*, 118 S.W.3d 1, 3 (Tex. App.—Houston [14th Dist.] 2003,

We overrule Anna and Jose's cross-issue.

## III. CONCLUSION

The property in this case was the community property homestead of Louis and Jeanette. When Jeanette moved out, this did not allow Louis to convey the property to Anna and Jose. Instead, he was required to either obtain Jeanette's joinder or file for and obtain court authority to sell, convey, or encumber the property. The deed to Anna and Jose is invalid. Because of our holding, we do not reach Maria's fifth issue that the conveyance was a pretended sale.[11]

The judgment of the trial court is reversed, and the case is remanded for the sole and limited purpose of entry of judgment containing the legal description of the property and ordering that Maria Luisa Ramos have superior title and possession of the subject property.

MARIA SALAS MENDOZA, Chief Justice

February 28, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

---

pet. denied) (noting that the real property over which husband had sole management and the authority to convey had never been the homestead of husband and wife).

[11] We also make no findings about the validity of Jeanette's deed to Maria or Louis's will, as those issues are not before us.